## Ward v. Whalen

*David S. Pollock,* for plaintiffs.
*David J. Humphreys,* for defendant.

WETTICK, *J.,* March 31, 1981—Plaintiffs are trustees of the Plumbers and Pipefitters National Pension Fund. Defendant is the president and sole

stockholder of Q-Dot, Inc., a company actively engaged in the plumbing and heating industry in Western Pennsylvania. A labor agreement between Q-Dot and a local union provides for Q-Dot to make pension contributions to plaintiffs on behalf of Q-Dot's employes. For a three month period in 1978, Q-Dot failed to make the contributions required by the agreement. Plaintiffs sued Q-Dot in the United States District Court for the Western District of Pennsylvania. This action was subsequently stayed because Q-Dot filed a petition for voluntary bankruptcy. Thereafter, plaintiffs instituted this present action against defendant, as Q-Dot's president and sole stockholder, to recover the pension contributions allegedly due under the agreement between the local union and Q-Dot. Defendant has filed preliminary objections in the nature of a demurrer which are the subject of this opinion and order of court.

The issue raised by these preliminary objections is whether defendant, as Q-Dot's president and sole stockholder, may be held liable for the pension contributions which Q-Dot failed to make. Defendant correctly asserts that he is not liable under the collective bargaining agreement because Q-Dot and a local union are the only parties to this agreement and there are no provisions within the agreement imposing any obligations on any officers or stockholders of Q-Dot to fulfill any of the provisions of this agreement. Furthermore, in this action plaintiffs are not raising a claim that the corporate veil should be pierced in order to impose corporate liability on Q-Dot officers or stockholders.

Plaintiffs base their action strictly on the Wage Payment and Collection Law of July 14, 1961, P.L. 637, as amended, 43 P.S. §260.1 et seq. The relevant

provisions of this act are section 3(b), 43 P.S. § 260.3(b), which requires every employer who agrees to provide fringe benefits to make the requisite payments within ten days after such payments are due; section 9.1, 43 P.S. § 260.9a, which permits employes through an agent or representative to maintain an action against an employer in any court of competent jurisdiction for unpaid wages; section 2.1, 43 P.S. § 260.2a, which defines wages to include fringe benefits and employer to include "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth *and any agent or officer of any of the above-mentioned classes* employing any person in this Commonwealth." (Emphasis supplied.)

While there appear to be no reported cases on the question of whether an officer of a corporation is an employer for purposes of being subjected to liability for unpaid wages, the act by its clear language imposes such liability upon a corporate officer. The legislature had some purpose for including an agent or officer of a corporation employing persons in the Commonwealth within the definition of employer, and the only apparent purpose was to subject these persons to liability in the event that a corporation or similar entity failed to make wage payments. Its reason for doing so is obvious. Decisions dealing with personnel matters and the expenditure of corporate funds are made by corporate officers and it is far more likely that the limited funds of an insolvent corporation will be used to pay wages and that a work force will be reduced while the corporation is still capable of meeting its obligations to its employes if personal liability is imposed on the persons who make these decisions. See, for example, Dale D. Akins, Inc. v. Com., 16 Pa. Com-

monwealth Ct. 191, 194, 329 A. 2d 869, 871 (1974), where the Commonwealth Court in considering whether a corporation was guilty of an intentional failure to meet the requirements of related legislation requiring employers to pay prevailing wage rates stated:

"Certainly it cannot be the law that corporate officials can 'turn their backs' or 'look the other way' thus avoiding specific knowledge and then plead the improper payments were not intentional. The very actions of being oblivious to the obvious are, in themselves, a knowing disregard of the rights of workmen which mandates the very severe penalties here involved."

This construction of the Wage Payment and Collection Law is also supported by section 11.1 of this legislation, 43 P.S. §260.11a. Subsection (b) of this section provides that any employer who violates any provisions of this act shall be guilty of a summary offense and upon conviction thereof shall be punished by a fine of not more than $300 or by imprisonment up to 90 days or by both, for each offense and subsection (c) provides that where the employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall each be guilty of such summary offense. By subjecting these corporate officers to fines and imprisonment for failure to pay wages, the legislature has again shown that it intends for these persons to be personally liable for outstanding corporate wage claims.

Defendant argues that the controlling definition of employer is that used in the collective bargaining agreement between the local union and Q-Dot. Since the parties to this agreement did not include

corporate officers within the agreement's definition of employer, defendant contends that Q-Dot's officers are not reached by the Wage Payment and Collection Law. We disagree. The purpose of the Wage Payment and Collection Law is to give additional protections to employes by providing statutory remedies for the employer's breach of its contractual obligation to pay wages. The legislation is premised upon the assumption that the agreement between the employer and union may be insufficient to protect the employe's wage claim. Thus we would completely defeat the purposes of the Wage Payment and Collection Law if we were to subordinate its provisions to the terms of a collective bargaining agreement.

Finally, defendant cites Com. v. Pro-Pak Foods, Inc., 65 D. & C. 2d 494 (1974), to support his contention that only the corporate employer is responsible for wage claims. In this case, the court ruled that a parent corporation which owned the entire stock of a subsidiary that had defaulted on a wage claim was not liable under the Wage Payment and Collection Law for the unpaid wage claim. This case is not controlling because section 2.1's definition of employer does not include corporate stockholders and there is therefore no language within the Wage Payment and Collection Law which imposes any liability on the corporate parent.

For these reasons, this court overrules defendant's preliminary objections in the nature of a demurrer.

## ORDER

On this March 31, 1981, it is hereby ordered that (1) defendant's request to strike the January 2,

1981 order of court is granted; and (2) defendant's preliminary objections in the nature of a demurrer are overruled.