J-E02001-14

2014 PA Super 260

| | |
|---|---|
| SCUNGIO BORST & ASSOCIATES, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| 410 SHURS LANE DEVELOPERS, LLC AND KENWORTH II, LLC, AND ROBERT DEBOLT, | |
| Appellees | No. 2493 EDA 2012 |

Appeal from the Judgment July 12, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 946 November Term, 2008

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, ALLEN, MUNDY, OTT, WECHT, and STABILE, JJ.

OPINION BY BOWES, J.:                                    **FILED NOVEMBER 20, 2014**

Scungio Borst & Associates ("SBA") appeals following entry of judgment in its favor and against 410 Shurs Lane Developers, LLC ("410 SLD") and Kenworth II, LLC ("Kenworth"), and challenges the September 30, 2010 order granting summary judgment in favor of Robert DeBolt, a principal in 410 SLD.  The underlying action was commenced for breach of contract, unjust enrichment, fraud, and for a violation of the Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. §§ 501-516.  After thorough review, we affirm.

The pertinent facts are as follows.  410 SLD contracted in writing with SBA for general contracting services on its condominium construction

project. SBA performed the contracted-for construction services, as well as $2.6 million in additional work at the direction of 410 SLD and its President and fifty percent shareholder, Mr. DeBolt. When SBA was not paid approximately $1.5 million incurred due to the additional work, it filed the within lawsuit against 410 SLD, Mr. DeBolt and others.

Mr. DeBolt subsequently filed a motion for summary judgment as to all claims pending against him individually, and the trial court granted the motion.[1] Claims against 410 SLD and Kenworth were tried non-jury, and judgment was entered against both entities for $1,979,341 on July 12, 2012. SBA timely appealed, challenging the grant of summary judgment in favor of Mr. DeBolt on the CASPA claim. Specifically, SBA raises the following issue for our review:

1. Did the lower court commit an error of law or abuse its discretion in granting summary judgment to DeBolt under CASPA, where:

    (a) CASPA makes the owner (410) [SLD] and the "agent of the owner acting with the owner's authority" (DeBolt) liable to contractors such as SBA,

    (b) DeBolt is a fifty percent owner of 410 [SLD],

    (c) SBA consistently dealt with DeBolt and received his authorizations for change orders, and

---

[1] SBA does not challenge the trial court's dismissal of its breach of contract, fraud, and unjust enrichment claims against Mr. DeBolt.

- 2 -

(d)  SBA never received payment for the change orders?

Appellant's brief at 5.

This Court may reverse a trial court's order granting or denying summary judgment only if there has been an error of law or an abuse of discretion.  ***Summers v. Certainteed Corp.***, 997 A.2d 1152, 1160 (Pa. 2010).  To the extent that we must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.  ***Id***. at 1159.  The record includes "all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports."  ***LJL Transp., Inc. v. Pilot Air Freight Corp.***, 962 A.2d 639, 647 (Pa. 2009).  We examine the record "in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party."  ***Id***.  Summary judgment is proper only if the moving party's right is "clear and free from doubt."  ***Id***.  The instant appeal involves an issue of statutory construction, which presents a pure question of law, and "our review is plenary and non-deferential."  ***Commonwealth v. Zortman***, 23 A.3d 519, 522-23 (Pa. 2011).

The fundamental issue in the instant appeal is whether SBA can maintain this action under CASPA against Mr. DeBolt, President and fifty-percent shareholder in 410 SLD, based upon 410 SLD's failure to pay SBA.  410 SLD is the owner of the improved property and the party that contracted for its improvement.  SBA's theory of liability is that Mr. DeBolt,

as an authorized agent of 410 SLD, is an "owner" as that term is defined in the statute, and therefore subject to CASPA liability for SLD's non-payment.[2]

This dispute stems from the General Assembly's use of the terms "owner" and "contracting party," terms that are not necessarily synonymous, in referring to those obligated to pay or make payment to contractors. "Owner" is defined as

> A person who has an interest in the real property that is improved and who ordered the improvement to be made. The term includes successors in interest of the owner and agents of the owner acting with their authority.

73 P.S. § 502. "Person" is defined as, "A corporation, partnership, business trust, other association, estate, trust foundation or a natural individual." ***Id***. It is undisputed that 410 SLD is a "person" with an interest in the property that ordered the improvements, and thus, an owner for purposes of the statute. 410 SLD is also the entity that contracted for the improvements. "Agent" is undefined. SBA maintains that Mr. DeBolt was the authorized

---

[2] SBA alleged in its fourth amended complaint that Mr. DeBolt was subject to liability for breach of contract and under CASPA as the alter ego of 410 SLD. The trial court found, however, that SBA "failed to proffer any evidence that would justify piercing the corporate veil of 410 SLD to reach Mr. DeBolt." Trial Court Opinion, 12/14/12, at 2. It "offered no evidence that Mr. DeBolt undercapitalized 410 SLD, failed to adhere to corporate formalities, intermingled 410 SLD's corporate and his own personal affairs, or used 410 SLD's corporate form to perpetuate a fraud against [SBA]" ***Id***. SBA has not challenged that finding on appeal.

agent of 410 SLD, and for purposes of summary judgment, we will treat him as such.

SBA argues first that the plain language of the statute unambiguously subjects owners and their agents, such as Mr. DeBolt, to CASPA liability for non-payment. It relies upon the definition of an owner as including "agents of the owner," and section 512, which imposes penalties for failure of owners, contractors and subcontractors to comply with the payment terms of the act, as the basis for imposing liability against Mr. DeBolt under CASPA.

We note preliminarily that the definitions provision of the statute is prefaced with the *caveat* that its definitions "shall have the meanings given to them in this section unless the context clearly indicates otherwise[.]" 73 P.S. § 502. Furthermore, CASPA applies to a "construction contract," which is defined as an "agreement, whether written or oral, to perform work on any real property located within this Commonwealth." ***Prieto Corp. v. Gambone Constr. Co.***, 2014 Pa. Super. LEXIS 2902 (Pa.Super. 2014); 73 P.S. §§ 502, 515.

CASPA provides that when a contractor or subcontractor performs, he is entitled "to payment from the party with whom the contractor or subcontractor has **contracted.**" 73 P.S. § 504, § 507(a) (emphasis added). Although the plain language of §§ 504 and 507 speaks in terms of the contracting party's liability for payment, other statutory provisions address

the respective duties of the owner to the contractor and the contractor to the subcontractor upon completion of performance. For instance, the duty to pay arises and the timetable for payment commences when the contractor submits a final application for payment to the owner. Payment to the contractor in turn starts the time running on the contractor's duty to pay the subcontractors.

Section 505 provides that, "The owner shall pay the contractor strictly in accordance with terms of the construction contract." 73 P.S. § 505(a). The owner may also withhold payment for deficiency items according to the terms of the construction contract. *Id*. That section also states that "If an owner is not withholding retainage, a contractor may withhold retainage from a subcontractor in accordance with their agreement, but that it shall be paid within 30 days after final acceptance of the work." *Id*. at § 505(b). The contractor pays its subcontractors, who in turn pay their subcontractors within fourteen days of the receipt of the retainage. Section 512 sets forth penalties for an owner, contractor or subcontractor's failure to comply with the Act, and directs that a court "shall award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was wrongfully withheld." Further, "If an owner, contractor or subcontractor unreasonably withholds acceptance of work or fails to pay retainage as required by this section, the owner, contractor or subcontractor shall be subject to the payment of interest at the rate established in section 5(d) on

the balance due and owing on the date acceptance was unreasonably withheld or the date the retainage was due and owing, whichever is applicable." 73 P.S. § 509(d).

SBA ignores the contracting party language of §§ 504 and 507 when it argues that CASPA's "agent of owner" language unambiguously subjects agents of owners to the same liability as owners of the improved property. In so doing, it violates the principle that we are to read the sections of a statute together and construe them to give effect to all of the statute's provisions. 1 Pa.C.S. § 1921(a). Furthermore, SBA's reliance upon statutory construction principles in support of its proposed interpretation of the statute undermines its position that the language is clear and unambiguous on its face. *See Stivason v. Timberline Post and Beam Structures Co.*, 947 A.2d 1279, 1281-82 (Pa.Super. 2008) (It is only when the statute is unclear that we use the rules contained in the Act to ascertain the legislature's intent). We find the General Assembly's use of both the term "contracting party" and "owner" in referencing the obligation to timely pay amounts owing under the construction contract as creating an ambiguity in the statute.

In construing a statute, the rules set forth in the Statutory Construction Act of 1972, 1 Pa.C.S. § 1501 *et seq.*, guide us. *Stivason*, *supra* at 1281-82. The object is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921.

"Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage[.]"  1 Pa.C.S.A. § 1903(a).  If the General Assembly defines words that are used in a statute, those definitions are binding.  *Commonwealth v. Kimmel*, 523 Pa. 107, 565 A.2d 426, 428 (1989).  Under the S[tatutory]C[onstruction] A[ct], a court may presume that in drafting the statute, the General Assembly intended the entire statute to be effective.  1 Pa.C.S.A. § 1922.  Thus, when construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections.  *Commonwealth v. Mayhue*, 536 Pa. 271, 639 A.2d 421, 439 (1994).

*Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875 (Pa.Super. 2011), *appeal granted in part on other grounds*, 47 A.3d 1174 (Pa. 2012).

When the words are not explicit, we discern legislative intent by examining:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

In support of its position that the legislature intended to subject agents of owners to individual liability under CASPA, SBA contends that the

- 8 -

legislature modeled CASPA after the Wage Payment Collection Law ("WPCL"), and urges us to interpret CASPA consistently with that law. First, it argues that CASPA's "agent of the owner" language is "virtually identical," and hence, analogous, to language in the definition of employer in the WPCL.[3] It continues that, since the WPCL's "agent or officer" language has been construed by our courts as subjecting agents or officers of an employer who have decision-making authority to personal liability for the employer's unpaid wages, we "should presume that the legislature intended CASPA's 'agent of owner' language to have the same meaning." Appellant's brief at 20.

SBA cites no authority or legislative history in support of its contention that CASPA and the WPCL were intended to be parallel provisions, and that the terms "agent of owner" and "agent or officer" of employer should be similarly construed.[4] Furthermore, the language "agent of owner" is facially

---

[3] The WPCL defines "employer" as including "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260.2a.

[4] In **Zimmerman v. Harrisburg Fudd I, L.P.**, 984 A.2d 497, 501 n.5 (Pa.Super. 2009), this Court stated that 62 Pa.C.S. §§ 3931-3939, a chapter of the Commonwealth Procurement Code, 62 Pa.C.S. §§ 101-4604, applicable to Commonwealth agencies and many local government units, and commonly referred to as the Prompt Pay Act,

> mirrors CASPA's purpose in the public contract sector with parallel regulations and sanctions. 62 Pa.C.S. §§ 3101-3102.

*(Footnote Continued Next Page)*

different, not virtually identical as SBA contends, from the "agent or officer" language used in the WPCL to define employer. Thus, the principle that the same language in a later statute should be construed the same as the prior interpretation, does not inform our review. ***See Delaware County v. Schaefer ex rel. Philadelphia Inquirer***, 45 A.3d 1149, 1155 (Pa.Cmwlth. 2012) (prior judicial authority controlled in the interpretation of the term "personal security" used in both the former and current Right to Know Law)) (citing ***Commonwealth v. Sitkin's Junk Co.***, 194 A.2d 199 (Pa. 1963) (interpreting term "manufacture" consistently with prior judicial interpretations).

Nor do we find similar the legislature's purpose or the mischief to be remedied in enacting the two statutes. The WPCL was enacted to provide a statutory vehicle for employees to enforce payment of their wages and compensation held by their employers. ***Thomas Jefferson University v.***

---
*(Footnote Continued)* ─────────────

> The clear intent of the Prompt Pay Act is to level the playing field between contractors and subcontractors when they are working on public projects. As such, the Prompt Pay Act requires contractors on public projects to honor their contractual obligations and pay subcontractors for all items satisfactorily completed.

Like CASPA, "The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages." ***Id***. at 501. That chapter does not contain, however, the "agent of owner" language that is at issue herein.

*Wapner*, 903 A.2d 565, 574 (Pa.Super. 2006) (citing *Hartman v. Baker*, 766 A.2d 347, 352 (Pa.Super. 2000)). Furthermore, although the General Assembly broadly defined "employer," the courts have narrowly construed this provision as imposing liability only against agents or officers who had an active role in decision making, *Int'l Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid-Atlantic Promotions, Inc.*, 856 A.2d 102, 105 (Pa.Super. 2004), and only in the event the corporation has first defaulted upon its wage payment obligation. *Amalgamated Cotton Garment and Allied Industries Fund v. Dion*, 491 A.2d 123 (Pa.Super. 1985).

By providing employees with a statutory remedy to recover wages and other benefits[5] that are contractually due to them against their managing agents or officers, as well as their employers, the legislature intended

> to give top corporate managers an incentive to use available corporate funds for the payment of wages and benefits rather than for some other purpose. *Carpenters Health [and Welfare Fund of Philadelphia and Vicinity by Gray v. Ambrose, Inc]*, 727 F.2d 279, 282-83 (3rd Cir. 1983)]. Holding the managers personally liable serves to give them an incentive not to divert funds away from the payments owed to employees.

*Belcufine v. Aloe*, 112 F.3d 633, 635 (3d Cir. 1997). The WPCL does not create an employee's substantive right to compensation; rather, it only

---

[5] ERISA has since been construed as pre-empting state law claims under Pennsylvania's WPCL for fringe benefits or wage supplements that constitute benefit plans under that statute. *See McMahon v. McDowell*, 794 F.2d 100 (3rd Cir. 1986).

establishes a statutory vehicle to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.

In contrast, this Court has held that "The underlying purpose of [CASPA] is to protect contractors and subcontractors . . . [and] **to encourage fair dealing among parties to a construction contract.**" ***Ruthrauff, Inc. v. Ravin***, 914 A.2d 880, 890 (Pa.Super. 2006) (emphasis added). We explained further that performance by either a contractor or subcontractor pursuant to a contract entitles him to **payment from the party with whom he contracted**. 73 P.S. § 504. ***Id***. (emphasis supplied). The statute "provides rules and deadlines to ensure prompt payments under construction contracts, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages." ***Waller Corp. v. Warren Plaza, Inc.***, 95 A.3d 313, 316 (Pa.Super. 2014).

By its terms, CASPA applies to construction contracts. 73 P.S. § 515. One must first establish a contractual right to payment pursuant to either a written or oral contract, and breach of that contract, to be entitled to CASPA relief. ***See Prieto Corp., supra*** (finding oral construction contract before applying CASPA). Thus, the construction contract is the starting point of any CASPA analysis. CASPA does not supplant the traditional breach of contract action between contracting parties; it merely makes additional remedies

available to contractors and subcontractors when they are not promptly paid by the party with which they contracted.

SBA urges us to construe the statutory language as acknowledging the liability of the contracting party for payment pursuant to the construction contract, but subjecting a broader category of owners that includes authorized agents to additional interest, penalties, and attorneys' fees when the contracting party fails to timely pay. Such an interpretation, however, imposes statutory penalties for breach of contract upon non-parties to the contract, which is contrary to well-established agency and contract principles. **See In re Estate of Duran**, 692 A.2d 176, 179 (Pa.Super. 1997) ("an individual acting as an agent for a disclosed principal is not personally liable on a contract between a principal and a third party unless the agent specifically agrees to assume liability."). Moreover, "[i]n the absence of express declaration, the law presumes that the act did not intend to make any changes in the common law, for if the legislature had that design they would have expressed it." **Buradus v. General Cement Prods. Co.**, 48 A.2d 883, 886 (Pa.Super. 1946) *affirmed per curium,* 52 A.2d 205 (Pa. 1947).

Given the statute's deference to the construction contract, we reject SBA's contention that the General Assembly intended to make every authorized agent of a property owner, or even corporate decision-makers, subject to liability under CASPA as owners. CASPA liability lies against

contracting parties only. The reference to authorized agents in the definition of owner merely reinforces that their conduct is imputed to and binding upon the owner. Since the term "agent" is not defined in the statute, conceivably that term could include architects, project managers, and designated representatives who are acting on behalf of the owner in dealing with the contractor.[6] "Contractor" is defined as "[a]person authorized or engaged by an owner to improve real property." 73 P.S. § 502. That definition is arguably broad enough to encompass agents of the owner. *See Joseph F. Cappelli & Sons v. Keystone Custom Homes, Inc.*, 815 A.2d 643, 646 (Pa.Super. 2003) (rejecting argument that party who met the definition of "owner" was also a "contractor" under CASPA). The "agent of owner" language was intended to clarify that persons acting on behalf of and with the authority of the owner are not contractors within the meaning of the statute for purposes of the time limitations contained therein. Furthermore, they are not entitled to avail themselves of the additional remedies afforded under CASPA in the event of a dispute with their principals.

Such a construction gives effect to all contractual provisions. It is also consistent with the statute's *proviso* that a contractor or subcontractor who performs in accordance with a contract is entitled "to payment from the

---

[6] Where a statute does not supply a definition for a term, the appellate court must apply the rules of statutory construction. 1 Pa.C.S. § 1502(a)(1). Under these rules, technical words are to be construed according to their "peculiar and appropriate meaning." 1 Pa.C.S. § 1903(a).

party with whom the contractor or subcontractor has contracted." 73 P.S. § 504. This interpretation is also in accord with well-settled contract and agency law, while still achieving its purpose of protecting construction contractors and subcontractors. Notably, it leaves intact a party's ability to pierce the corporate veil and hold shareholders and members of corporate entities personally liable for the debts of the corporation where the facts warrant. It is consistent with the principle that, in the absence of a clear statement, the law presumes that a statute did not intend to make any change in the common law. *In re Rodriguez*, 900 A.2d 341, 345 (Pa. 2003). "Based on this principle of law, we must assume that the General Assembly understands the legal landscape upon which it toils, and we therefore expect the General Assembly to state clearly any intent to redesign that landscape." *Id*.

SBA argues in the alternative that Mr. DeBolt is individually liable under CASPA for failure to pay pursuant to all written and verbal and change orders. However, as Mr. DeBolt points out, there was no allegation below that his dealings with SBA created a new contract with him personally. In fact, SBA represents that Mr. DeBolt's verbal authorizations were part of the construction contract between SBA and 410 SLD. *See* Appellant's brief at 21. Thus, we find no basis to subject Mr. DeBolt to personal liability based on those verbal authorizations and change orders.

Judgment affirmed.

P.J.E. Ford Elliott, and Judges Shogan, Allen, Ott, and Stabile join the Opinion.

P.J.E. Bender files a Dissenting Opinion in which Judges Mundy and Wecht join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/20/2014