J-E02001-14

2014 PA Super 260

| SCUNGIO BORST & ASSOCIATES, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellants | |
| v. | |
| 410 SHURS LANE DEVELOPERS, LLC AND KENWORTH II, LLC AND ROBERT DEBOLT | |
| Appellees | No. 2493 EDA 2012 |

Appeal from the Judgment July 12, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 946 November Term, 2008

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, J., SHOGAN, J., ALLEN, J., MUNDY, J., OTT, J., WECHT, J., and STABILE, J.

DISSENTING OPINION BY BENDER, P.J.E.:          **FILED NOVEMBER 20, 2014**

I respectfully dissent.  I disagree with the Majority's affirmance of the trial court's grant of summary judgment in favor of Robert DeBolt, president and fifty percent shareholder of 410 Shurs Lane Developers, LLC (410 SLD), in the suit filed by Scungio Borst & Associates (SBA) to recover sums due it for unpaid work in connection with a construction contract.  Because I believe that the Majority's opinion neglects to include the "agents of the owner acting within their authority" language in defining the term "owner" as defined in the Contractor and Subcontractor Payment Act (CASPA), 73 P.S. §§502-516, and because I believe that issues of material fact exist, I would reverse the trial court's grant of summary judgment.

SBA argues that Mr. DeBolt, acting as an authorized agent of 410 SLD, is an "owner" as that term is defined in the CASPA in that he is a fifty percent owner and a key decision maker. As a factual basis for this claim, SBA asserts that the parties entered into the construction contract on September 2, 2005, with SBA to receive $3.8 million dollars for the labor and materials it supplied to the project. SBA claims it was directed to submit all bills to 410 SLD and DeBolt and was paid by Sovereign Bank. However, at the end of June 2006, SBA stopped receiving payments, but was assured by DeBolt that payment would be forthcoming. Based upon these assurances, SBA continued its performance until November 8, 2006, when SBA was informed that the contract was terminated. At that time, SBA was owed $1,544,161 plus interest and costs, an amount that related to "change orders" or "cost events" that were authorized by DeBolt. SBA acknowledges that the contract included language indicating that "[a] Change Order is a written instrument prepared by the Architect and signed by the Owner, Contractor and Architect…." Contract, § 7.2.1. However, contrary to 410 SLD's position that oral change orders were not valid, SBA asserts that it was often the practice that DeBolt would verbally authorize change orders and would not sign them.

In ***Zimmerman v. Harrisburg Fudd I, L.P.***, 984 A.2d 497 (Pa. Super. 2009), this Court explained that CASPA is

> a comprehensive statute enacted in 1994 to cure abuses within
> the building industry involving payments due from owners to

- 2 -

contractors, contractors to subcontractors, and subcontractors to other subcontractors. "The underlying purpose of [CASPA] is to protect contractors and subcontractors . . . [and] to encourage fair dealing among parties to a construction contract." ***Ruthrauff, Inc. v. Ravin, Inc.***, 914 A.2d 880, 890 (Pa. Super. 2006). The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalty, attorney fees and litigation expenses may be imposed on an owner, contractor or subcontractor who fails to make payment to a contractor or subcontractor in compliance with the statute.

***Id.*** at 500-01.

In arguing that DeBolt is an "agent of the owner" and thus liable to SBA for the sums due, SBA cites section 502 of CASPA, which defines "owner" as "[a] person who has an interest in the real property that is improved and who ordered the improvement to be made. The term includes successors in interest of the owner and *agents of the owner acting with their authority*." 73 Pa.C.S. § 502 (emphasis added). SBA also cites the definition of "construction contract" which provides that it is an agreement, "whether written or oral." ***Id.*** Thus, SBA claims that the verbal authorizations for change orders are encompassed in the agreement and that DeBolt is individually liable.

SBA also cites the Wage Payment and Collection Law (WPCL), 43 Pa.C.S. §§ 260.1 *et seq.*, claiming that it is analogous to CASPA and supports SBA's interpretation of the term "agent of the owner." SBA's brief at 16 (stating, "[c]ourt's have construed the WPCL's 'agent' language to

include individuals of employers with decisionmaking authority and have held these individual 'agents' liable for the employer's unpaid wages. CASPA treats 'agent' in the same manner as the WPCL. Thus, individual 'agents' with decisionmaking authority such as DeBolt are liable under CASPA for a contractor's unpaid work."). In further support of this proposition, SBA quotes *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84 (Pa. Super. 2006), which states:

> "To hold an 'agent or officer' personally liable for unpaid wages, 'evidence of an active role in decision making is required.'" *Int'l Ass'n of Theatrical Stage Employees., Local Union No. 3 v. Mid-Atl. Promotions, Inc.*, 856 A.2d 102, 105 (Pa. Super. 2004) (citing *Mohney v. McClure*, 390 Pa. Super. 338, 568 A.2d 682 (Pa. Super. 1990), *affirmed per curiam*[,] 529 Pa. 430, 604 A.2d 1021 (1992)). In that case, a panel of this Court found that "[t]o sustain its case against Appellee as an 'employer' under the WPCL, Appellant had to show Appellee was actively involved in corporate policy-making, such as corporate decision-making or corporate advisement on matters of pay or compensation." *Mid-Atl. Int'l Ass'n of Theatrical Stage Employees., Local Union No. 3 v. Promotions, Inc.*, 856 A.2d at 106.

*Id.* at 88.

In relating this concept to the instant case, SBA argues that because DeBolt was in an active role in decision making and authorizing the change orders, he should be considered an agent of the owner and subject to liability pursuant to CASPA. I agree with SBA's position and, based upon the above discussion, I would conclude that SBA provided a sufficient basis upon which DeBolt could be held to be an agent of the owner. However, it is for a

jury to determine based on facts presented to it, whether or not DeBolt should be found to be an agent of the owner.

SBA further contends that a construction contract may be modified orally despite the contract provision that requires change orders to be in writing. To support this contention, SBA relies on *Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 244 A.2d 10 (Pa. 1968), wherein the Supreme Court stated:

> [I]t appears undisputed that the contract can be modified orally although it provides that it can be modified only in writing. E.g., *Wagner v. Graziano Construction Co.*, 390 Pa. 445, 136 A.2d 82 (1957); 4 Williston on Contracts, § 591 (3d ed. 1961); 6 Corbin on Contracts, § 1295 (1962); Restatement, Contracts, § 407 (1932). Construction contracts typically provide that the builder will not be paid for extra work unless it is done pursuant to a written change order, yet courts frequently hold that owners must pay for extra work done at their oral direction. *See generally* Annot., 2 A.L.R. 3d 620, 648-82 (1965). This liability can be based on several theories. For example, the extra work may be said to have been done under an oral agreement separate from the written contract and not containing the requirement of a written authorization. 3A Corbin on Contracts, § 756 at p. 505 (1960). The requirement of a written authorization may also be considered a condition which has been waived. 5 Williston on Contracts, § 689 (3d ed. 1961).

*Id.* at 15. The Supreme Court further stated:

> [T]he effectiveness of a non-written modification in spite of a contract condition that modifications must be written depends upon whether enforcement of the condition is or is not barred by equitable considerations, not upon the technicality of whether the condition was or was not expressly and separately waived before the non-written modification.
>
> In view of these equitable considerations underlying waiver, it should be obvious that when an owner requests a builder to do extra work, promises to pay for it and watches it

performed knowing that it is not authorized in writing, he cannot refuse to pay on the ground that there was no written change order. ***Focht v. Rosenbaum***, 176 Pa. 14, 34 A. 1001 (1896). When Moon directed Universal to "go ahead" and promised to pay for the extras, performance of the condition requiring change orders to be in writing was excused by implication. It would be manifestly unjust to allow Moon, which mislead [*sic*] Universal into doing extra work without a written authorization, to benefit from non-performance of that condition.

***Id.*** at 16.

SBA also references deposition testimony taken during the discovery period, which is most telling. Notably, the two principals of SBA, Scungio and Borst, related what occurred when DeBolt gave verbal instructions directing changes, *i.e.*, cost events or change orders. ***See*** Scungio's Deposition, 2/17/10; Borst's Deposition, 3/3/10. Scungio's and Borst's descriptions of conversations directing changes during construction are contrary to DeBolt's statements in his affidavit in support of his summary judgment motion. Specifically, DeBolt averred that, "I never approved the work, orally or otherwise, for which [SBA] seeks payment" and "I never executed the change orders upon which [SBA] bases its claims." DeBolt's Affidavit, 3/31/10, ¶¶ 10, 11.

After reviewing the record in a light most favorable to the non-moving party, SBA, I would conclude that genuine issues of material fact exist. These factual issues necessitate findings as to what actually occurred at the building site or elsewhere concerning DeBolt's directions about change orders, *i.e.*, what a fact finder would deem credible regarding the actual

communications about DeBolt's directions and the compliance with these directions by SBA despite the lack of written change orders. More importantly, an issue of material fact exists in connection with DeBolt's capacity/authority relating to 410 SLD that compelled SBA's representatives to comply with DeBolt's oral change orders. As a result of the existence of these unanswered questions, I would determine that the trial court erred as a matter of law when it granted summary judgment in favor of DeBolt. Noting the law quoted above, I recognize that the existence of these material facts raises doubts that must be resolved against the moving party. Accordingly, I believe this Court is compelled to vacate the order granting summary judgment in DeBolt's favor and remand the matter to the trial court for further proceedings. For these reasons, I must dissent.

Judge Mundy joins this dissenting opinion.

Judge Wecht joins this dissenting opinion.