**[J-64-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | |
|---|---|
| SCUNGIO BORST & ASSOCIATES, | : No. 28 EAP 2015 |
| | : |
| Appellant | : Appeal from the judgment of the |
| | : Superior Court entered on November |
| | : 20, 2014 at No. 2493 EDA 2012, |
| v. | : affirming the judgment entered on July |
| | : 12, 2012 in the Court of Common Pleas |
| | : of Philadelphia County, Civil Division, at |
| 410 SHURS LANE DEVELOPERS, LLC | : No. 946 November Term, 2008 |
| AND KENWORTH II, LLC AND ROBERT | : |
| DEBOLT, | : ARGUED: May 11, 2016 |
| | : |
| Appellees | : |

**OPINION**

**JUSTICE TODD**                                **DECIDED: September 28, 2016**

In this appeal, we consider whether a contractor may maintain an action under the Contractor and Subcontractor Payment Act ("CASPA")[1] against a property owner's agents. After careful review, we hold that a contractor may not do so, and, accordingly, we affirm the order of the Superior Court.

By way of statutory background, CASPA generally provides that a contractor or subcontractor who improves real property pursuant to a contract is entitled to timely payment pursuant to governing contract terms, or, in the absence of such terms, according to a statutorily-specified timetable, on pain of liability in the form of interest payments, and, if litigation is commenced, penalties and reasonable attorneys' fees and expenses. Relevant to the issue herein – *i.e.*, *whom* a contractor or subcontractor is entitled to recover *from* – Section 4 of CASPA provides that a contractor or

---

[1] 73 P.S. §§ 501 *et seq.*

subcontractor is entitled "to payment from the party with whom the contractor or subcontractor has contracted." 73 P.S. § 504.[2]  Sections 5 through 12 of CASPA, however, do not use this "contracting party" language and instead describe the relative obligations and rights of "owners," "contractors," and "subcontractors."  See 73 P.S. § 505-512.  Most centrally, Section 5, entitled "Owner's payment obligations," provides that "[t]he owner shall pay the contractor strictly in accordance with terms of the construction contract," creates a default term for timely payment in the absence of an express term governing the same, and subjects "owners" who do not timely pay contractors to interest payments at a statutorily-provided rate.  73 P.S. § 505.[3]  Likewise, Section 12 provides that "owners" who fail to comply with CASPA's requirements are subject to "a penalty equal to 1% per month of the amount that was wrongfully withheld," as well as reasonable attorneys' fees and expenses.  73 P.S. § 512.

Finally, of particular importance herein, Section 2 of CASPA defines "owner," "unless the context clearly indicates otherwise," as

> [a] person who has an interest in the real property that is improved and who ordered the improvement to be made. The term includes successors in interest of the owner and agents of the owner acting with their authority.

73 P.S. § 502.

Against this legal backdrop, the factual and procedural history of this matter is relatively straightforward.  Beginning in 2005, Appellant Scungio Borst & Associates ("SBA") entered into a series of written and oral construction contracts with Appellee

---

[2] With respect to subcontractors, Section 7(a) of CASPA likewise provides that a subcontractor is entitled to "payment from the party with whom the subcontractor has contracted."  73 P.S. § 507(a).

[3] Section 7 imposes parallel obligations on contractors and subcontractors vis-à-vis their own subcontractors.  See 73 P.S. § 507.

410 Shurs Lane Developers, LLC ("410 SLD"), which 410 SLD's part-owner and president, Appellee Robert DeBolt ("DeBolt"), executed on 410 SLD's behalf. Therein, SBA agreed to improve real property owned by 410 SLD in connection with the development of a condominium complex, and did so until November 2006, when SBA's contracts were terminated with approximately $1.5 million in outstanding payments due. SBA requested payment, but 410 SLD, again through DeBolt, refused.

Accordingly, SBA filed the instant action against 410 SLD; its alleged successor corporation, Appellee Kenworth II, LLC ("Kenworth"); and DeBolt in his personal capacity. SBA asserted, among other claims, violations of CASPA. Central to this appeal, DeBolt filed a motion for summary judgment with respect to SBA's claim under CASPA, arguing he could not be held liable under CASPA because he was not a party to SBA's contract with 410 SLD, and citing Section 4 for the proposition that CASPA applies solely to parties to a construction contract.[4] SBA responded that DeBolt was liable under Sections 2 and 5 because he was an agent of 410 SLD who acted with his authority in ordering the subject work.[5] (The parties do not dispute that DeBolt acted as 410 SLD's agent in this respect.) SBA further claimed that Section 2 was analogous to Section 260.2a of the Wage Payment Collection Law ("WPCL")[6] – which defines an employer subject to liability thereunder as including an employer's "agents" or "officers"[7] and which some courts have interpreted as permitting action against such agents or

---

[4] See Motion for Summary Judgment of Defendant Robert W. DeBolt, 4/1/10, at 7; Memorandum of Law In Support of the Motion for Summary Judgment of Defendant Robert W. DeBolt, 4/1/10, at 6-7.

[5] See Memorandum of Law of Plaintiff Scungio Borst & Associates in Opposition to Motion for Summary Judgment of Defendants, 4/1/2013, at 12-14 (R.R. at 43-53).

[6] 43 P.S. §§ 260.1 et seq.

[7] See 43 P.S. § 260.2a. Section 260.2a defines an "employer," as "every person, firm, partnership, association, corporation, receiver, or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."

officers in their personal capacities – and, thus, should be similarly interpreted as permitting actions against property owners' agents in their personal capacities.[8] The trial court disagreed:

> [410 SLD] was the "owner" of the property and . . . DeBolt was not. CASPA imposes payment obligations upon the owner of real property, and a contractor may sue the owner if such payments are not made. . . . Although the owner's "agents" are included in this definition, the legislature cannot have intended to make every "agent," including even the lowliest employee, liable for a corporate property owner's debts to its contractors. Instead, the legislature must have intended to hold the principal, *i.e.*, the owner, liable for its agents' authorized acts in "ordering the improvement to be made." Such an interpretation comports with general agency law.

Trial Court Opinion, 12/14/2012, at 3 (citations omitted). Accordingly, the trial court granted DeBolt's motion for summary judgment.

SBA ultimately obtained a default judgment in the amount of $1.9 million against 410 SLD and Kenworth. SBA then appealed the trial court's order granting DeBolt's motion for summary judgment to the Superior Court.[9]

In a scholarly and comprehensive published opinion authored by Judge Mary Jane Bowes, an *en banc* panel of the Superior Court affirmed. Scungio Borst & Assocs. v. 410 Shurs Lane Developers, LLC, 106 A.3d 103 (Pa. Super. 2014) (*en banc*). The court first rejected SBA's primary argument that Section 2's definition of "owner" clearly and unambiguously permitted it to recover from DeBolt. Preliminarily, the court noted that Section 2 contains a caveat that its definitions apply "unless the context clearly

---

[8] See Second Supplemental Memorandum of Law of Plaintiff Scungio Borst & Associates in Opposition to Motion for Summary Judgment of Robert DeBolt, undated, at 1-3 (R.R. at 66-68).
[9] 410 SLD and Kenworth did not appeal the judgment against them and are not involved in the instant appeal.

indicates otherwise," id. at 106 (quoting Section 2), and added that, pursuant to its own precedent, CASPA applies only in the context of a construction contract, id. (citing, *inter alia*, Prieto Corp. v. Gambone Constr. Co., 106 A.3d 103 (Pa. Super. 2014)). The court then found tension between Section 4's language that a contractor is entitled to payment from "the party with whom the contractor . . . has contracted" and the ensuing sections' description of a contractor's right to payment from an "owner," finding that such tension rendered the statute's language ambiguous as to whether a contractor could recover from an owner's agent, in a personal capacity. Accordingly, the court held that Section 2 did not clearly and unambiguously permit SBA's claim against DeBolt in his personal capacity.

Turning to SBA's contention that Section 2 was an analogue to Section 260.2a of the WPCL, the court noted that SBA cited no legislative history or authority suggesting that Section 2 was modeled after Section 260.2a, and remarked that the provisions' language was materially different. The court further noted that, while the WPCL was intended to provide employees a mechanism to disgorge wrongfully withheld wages from their employers, and while imposing personal liability for employers' agents gave "top corporate managers an incentive to use available corporate funds for the payment of wages and benefits rather than for some other purpose," id. at 108 (citing Carpenters Health and Welfare Fund of Phila. and Vicinity by Gray v. Ambrose, Inc., 727 F.2d 279, 282-83 (3d Cir. 1983)), CASPA was intended "to protect contractors and subcontractors [and] **to encourage fair dealing among parties to a construction contract**," id. at 109 (quoting Ruthauff, Inc. v. Ravin, 914 A.2d 880, 890 (Pa. Super. 2006)) (emphasis in Scungio Borst & Assocs). Bearing that distinction in mind, and reiterating CASPA's dependence upon the existence of a construction contract, the court concluded:

> [T]he construction contract is the starting point of any CASPA analysis. CASPA does not supplant the traditional

> breach of contract action between contracting parties; it merely makes additional remedies available to contractors and subcontractors when they are not promptly paid by the party with which they contracted.

Id. at 109.

Finally, the court rejected SBA's interpretation of Section 2 as imposing liability on owners' agents on the basis that it would run contrary to the longstanding principles that non-parties to a contract may not be held liable thereunder and that an agent of a disclosed principal is not personally liable for contracts entered into in the scope of his agency on the principal's behalf. The court reasoned that, if the General Assembly had sought to abrogate such bedrock principles of contract and agency law, it would have done so more expressly. Id. (citing In re Estate of Duran, 692 A.2d 176, 179 (Pa. Super. 1997); Buradus v. General Cement Prods. Co., 48 A.2d 883, 886 (Pa. Super. 1946), *aff'd per curiam*, 52 A.2d 205 (Pa. 1947)).

Given the foregoing, the court concluded that Section 2's definition of owner did not impose personal liability on property owners' agents; instead, the court reasoned:

> The reference to authorized agents in the definition of owner merely reinforces that their conduct is imputed to and binding upon the owner. Since the term "agent" is not defined in the statute, conceivably that term could include architects, project managers, and designated representatives who are acting on behalf of the owner in dealing with the contractor. "Contractor" is defined as "[a] person authorized or engaged by an owner to improve real property." 73 P.S. § 502. That definition is arguably broad enough to encompass agents of the owner. . . . The "agent of owner" language was intended to clarify that persons acting on behalf of and with the authority of the owner are not contractors within the meaning of the statute for purposes of the time limitations contained therein. Furthermore, they are not entitled to avail themselves of the additional remedies afforded under CASPA in the event of a dispute with their principals.

Id. at 109-10. In the court's view, this construction of Section 2 is consistent with Section 4, with well settled principles of the common law of contracts and agency, and still served CASPA's purpose of protecting contractors because parties could "pierce the corporate veil" to hold shareholders liable. Id. at 110. (DeBolt was a shareholder of 410 SLD.)

President Judge Emeritus John Bender, joined by then-Judges, now-Justices, Sallie Updyke Mundy and David Wecht, dissented, agreeing with SBA's position that Section 2 of CASPA was analogous to Section 260.2a of the WPCL, and should be interpreted as providing for agent liability where agents are involved in decisions giving rise to liability.

Thereafter, on SBA's petition, we granted allowance of appeal to consider whether a contractor may maintain an action under CASPA against a property owner's agents. Scungio Borst & Assocs. v. 410 Shurs Lane Developers, LLC, 120 A.3d 298 (Pa. 2015) (order).

Before us, SBA renews its argument that the plain meaning of the foregoing provisions permits it to maintain its action against DeBolt in his personal capacity. As it did below, SBA explains that CASPA provides for an "owner's" liability, and that, as detailed above, Section 2 defines an owner as including "agents of the owner acting with their authority." Thus, SBA reasons, because of 410 SLD's breach of contract, DeBolt, an "'agent of the owner acting with [his] authority,'" is individually liable to SBA under CASPA. Appellant's Brief at 13-14 (quoting 73 P.S. § 502).

In the alternative, assuming *arguendo* that CASPA is ambiguous, SBA reasserts its view, rejected by the Superior Court, that Section 2's language defining an "owner" as including "agents of the owner acting with their authority" is analogous to Section 260.2a of the WPCL's definition of "employers" as including an employer's "agent[s] or

officer[s]," and, thus, that this Court should interpret Section 2, as other courts have interpreted Section 260.2a,[10] as imposing personal liability on agents with decision-making authority. Specifically, SBA posits that "the intent of both acts is to protect workmen" by ensuring that they get paid for work performed, that both statutes define liable entities as including their agents, and, thus, they should be interpreted as similarly imposing liability on agents who are decision-makers. Appellant's Brief at 13-16. SBA contends this limitation on agency liability deflates the trial court's concern that its interpretation could render all of a firm's employees liable for its debts.

Further, SBA disputes the Superior Court's conclusion that SBA cited no authority or legislative history in support of its analogy between CASPA and the WPCL, and contends that the court's view that the statutes use materially different terms is equivalent to a "claim . . . that the use of 'agent' in both acts is an accident," but "[c]ommon sense dictates otherwise [and the] use of the same term in both acts is a facial similarity, not a facial difference." Appellant's Brief at 19 n.2. SBA further submits that the Superior Court's analysis ignores the presumption that the legislature is familiar with extant law when enacting legislation and that it may use statutory language already interpreted in a particular way to indicate its intent to obtain a similar interpretation of a new statute. SBA notes that the judicial decisions interpreting the foregoing language of the WPCL predate the General Assembly's enactment of CASPA, and, thus, reasons that the presumption applies herein. Thus, SBA contends the Superior Court's

---

[10] See, inter alia, Ward v. Whalen, 18 Pa. D. & C. 3d 710 (Ct. Com. Pl. Allegheny 1981) (Wettick, J.) (interpreting Section 260.2a as permitting actions against agents in their personal capacities); Amalgamated Cotton Garment and Allied Indus. Fund v. Dion, 491 A.3d 123 (Pa. Super. 1985) (approving Ward but limiting it to instances where an employer itself defaults); Mohney v. McClure, 568 A.2d 682 (Pa. Super. 1990) (holding that such actions are permissible only against officers and agents involved in salient decision-making).

determination that CASPA merely provides additional remedies to contracting parties is erroneous, and that the statute, like the WPCL, actually incentivizes agents to remedy owners' violations in order to protect contractors.

Finally, SBA challenges the Superior Court's view that Section 2's reference to agents merely clarifies that agents' conduct is imputed to owners and explains that agents are not contractors within the meaning of its terms. SBA contends that view is inconsistent with CASPA's definition of an "owner" subject to liability under, *inter alia*, Sections 505 and 512. SBA adds that, insofar as "owners" subject to liability are intended to include "agents of the owner acting with their authority," "it follows that 'agents of owners' are subject to liability under CASPA," and "[t]he majority's interpretation of 'agent of the owner' as a mere device for distinguishing agents from contractors is unsound." Appellant's Brief at 20-21.

DeBolt, by contrast, argues that a party may recover under CASPA only from a party with whom it contracted. He submits that the language of Section 4 suggests as much, and that it would be absurd to interpret the remaining provisions of CASPA as breaking from longstanding, basic contract and agency law principles to impose liability on an agent for his principal's obligations, essentially rendering agents as personal guarantors of their principals' construction contracts. DeBolt thus agrees with the Superior Court's conclusion that Section 2's language was merely intended to establish that an agent's conduct is imputed to an owner, and that an agent is not himself a contractor. He claims that SBA's reliance on the WPCL is flawed, reasoning that "the statutes are incongruous, and there is no authority or legislative history to conclude that CASPA and the WPCL were intended to be parallel provisions, or that the terms should be similarly construed." Appellee's Brief at 9. DeBolt asserts that the legislature enacted the WPCL to cure the unequal bargaining power between employers and

employees, whereas there is no similar inequality among property developers and their contractors.

Because the issue of whether a contractor may bring a CASPA action against a property owner's agent is one of statutory construction — a pure question of law — our standard of review is *de novo* and our scope of review is plenary. Freedom Medical Supply, Inc. v. State Farm Fire and Cas. Co., 131 A.3d 977, 980 (Pa. 2016). In interpreting a statute, this Court endeavors to "ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). Because, "generally, the best indicator of legislative intent is the plain language of the statute," we begin our inquiry by considering the words of the statute. Com., Ofc. of the Gov. v. Donahue, 98 A.3d 1223, 1237 (Pa. 2014); 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"). In doing so, we construe words and phrases according to their "common and approved" usage or, as appropriate, their "'peculiar and appropriate' or statutorily provided meanings." Freedom Medical Supply, 131 A.3d at 983 (citing 1 Pa.C.S. § 1903). Finally, we bear in mind that words and phrases must be viewed "not . . . in isolation, but . . . with reference to the context in which they appear." Meyer v. Comm. Coll. of Beaver Cnty., 93 A.3d 806, 813 (Pa. 2014).

Thus, our initial inquiry is whether the plain language of Section 2's provision that "owner" means a "person who has an interest in the real property that is improved and who ordered the improvement to be made," and includes "agents of the owner acting with their authority," 73 P.S. § 502, is clear and unambiguous with respect to agent liability. We conclude it is not. On the one hand, as SBA argues, one can read Section 2's definition of owner – as including "agents of the owner acting with their authority" – to indicate that such agents are equivalent to owners for purposes of the statute. Under

such a reading, an owner's agent would share the owner's statutory obligations to timely pay contractors, as well as potential liability where contractors are not timely paid. On the other hand, as the lower courts concluded, one can read Section 2's first clause – defining an "owner" as "[a] person who has an interest in the real property that is improved and who ordered the improvement to be made" – as the term's definition. Under that view, Section 2's second clause – providing that "[t]he term includes successors in interest of the owner and agents of the owner acting with their authority" – as, essentially, a proviso (albeit an awkward one) modifying the first clause and clarifying that an owner remains liable under CASPA's operative provisions notwithstanding the owner's employment of an agent to order the subject improvements, or the owner's conveyance of its interest in the subject property to another entity. In our view, both constructions are reasonable interpretations of Section 2's text, and, accordingly, we conclude that Section 2 is ambiguous with respect to agent liability.

Where statutory language is ambiguous, this Court resolves such ambiguity by considering, *inter alia*, the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes upon the same or similar subjects; the consequences of a particular interpretation; and contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Furthermore, subject to several exceptions for particular types of statutes not implicated herein, we liberally construe statutes "to effect their objects and promote justice." 1 Pa.C.S. § 1928(c). Thus, we assess the foregoing factors to determine which of the parties' views is most consistent with legislative intent.

We begin our inquiry in this regard with a brief review of the law concerning timely payment of contractors prior to CASPA's enactment, the legislative history

attendant CASPA's passage, and its substantive effect. Prior to CASPA's enactment, an unpaid contractor would typically pursue a breach of contract claim against the property owner. Yet, a contractor so proceeding could face a series of potential pitfalls. Under traditional contract law, a contractor was entitled to payment according to the terms of its contract, or, in the absence of such a term, within a "reasonable time" or upon completion of its work. See 17 C.J.S. Contracts § 79. Under these standards, a contractor would face the option of potentially costly litigation over whether delays in payment were "reasonable," or awaiting the conclusion of its work to be paid, an unsatisfying option for large and lengthy construction projects. Similarly, under traditional contract law, an unpaid contractor would be required to pay its own litigation costs, including attorneys' fees and expenses. See 20 C.J.S. Costs §§ 3, 173. Thus, if a contractor's damages were less than the cost of litigation, it might well be dissuaded from vindicating its rights.

In 1994, however, the General Assembly considered H.B. 906, the legislation which became CASPA,[11] then subtitled "[an act requiring] timely payment to certain contractors and subcontractors; and providing remedies to contractors and subcontractors." Engaging in no floor debate whatsoever, the legislature passed H.B. 906 in near-unanimous votes before the House and Senate. CASPA displaced the common law standards vis-à-vis what constitutes timely payment in the context of construction contracts with, as detailed above, a statutorily-specified timetable, and provided additional incentives – in the form of interest payments at a statutorily-provided rate, penalty damages, reasonable attorneys' fees, and costs – that reduced the aforementioned disincentives for contractors to pursue their contractual rights.

---

[11] Act of Feb. 17, 1994, P.L. 73, No. 7 § 1.

In our view, the General Assembly in enacting CASPA intended to address the problems inherent in reliance on common law contract doctrine to solve payment disputes in the construction field, and did not intend, as SBA suggests, to impose liability on agents. First, we note that CASPA's subtitle focuses on two subjects – timely payment and remedies – and does not suggest that its provisions impose liability on non-contracting parties.[12]

Second, SBA's claim that Section 2 permits a contractor to recover from a property owner's agents creates tension with Section 4's provision that "[p]erformance by a contractor . . . in accordance with the provisions of a contract shall entitle the contractor or subcontractor to payment **from the party with whom the contractor . . . has contracted**," 73 P.S. § 504 (emphasis added), and Section 7(a)'s similar focus on contracting parties, see 73 P.S. § 507(a) (providing that a subcontractor is entitled to payment "from the party with whom the subcontractor has contracted"). Plainly, SBA's approach would extend a contractor's right to payment beyond that contemplated in Sections 4 and 7, as agents are not ordinarily parties to their principals' construction contracts. Likewise, SBA's interpretation of Section 2 is difficult to reconcile with the myriad provisions of CASPA which regard a construction contract as central to a contractor's claim. See, e.g., 73 P.S. § 504 (conditioning entitlement to payment on "[p]erformance . . . in accordance with the provisions of a contract"); 73 P.S. § 505 (requiring payment in strict compliance with "the terms of the construction contract"); 73

---

[12] Our view of CASPA's purpose in this regard is consistent with numerous decisions describing CASPA as protecting contractors and subcontractors by encouraging fair dealing *among parties to construction contracts*, which stem largely from Judge R. Stanton Wettick's decision in Richardson v. Sherman, 26 Pa. D. & C. 4th 193 (Ct. Com. Pl. Allegheny 1996). See, e.g., Nippes v. Lucas, 815 A.2d 648 (Pa. Super. 1996); R.W. Sidley, Inc. v. U.S. Fidelity & Guar. Co., 319 F. Supp.2d 554 (W.D. Pa. 2004); Ruthrauff, supra; Zimmerman v. Harrisburg Fudd I, L.P., 984 A.2d 497 (Pa. Super. 2009); Lomas v. Kravitz, 130 A.3d 107 (Pa. Super. 2015).

P.S. § 506(a) (permitting owners to withhold payments for deficiently performed work "according to the terms of the construction contract"). SBA's view of the statute dispenses with that centrality, and extends liability to agents, who, again, may be entirely foreign to the agreement. Although SBA correctly notes that Sections 5 through 12 also set forth the liability of "owners," in our view, the only way to harmoniously view CASPA, as a whole, is to conclude that Sections 5 through 12 do not intend thereby to impose agency liability.

Third, SBA's interpretation would require that a property owner's agents personally assume the obligations of the owner's construction contracts with respect to payments to contractors, contrary to longstanding and fundamental common law agency principles. See Vernon D. Cox & Co. v. Giles, 406 A.2d 1107, 1110 & n.4 (Pa. Super. 1979) (noting that it "is a basic tenet of agency law that an individual acting as an agent for a disclosed principle [sic] is not personally liable on a contract between the principle [sic] and a third party unless the agent specifically agrees to assume liability" and that "[t]he fact that a corporate officer cannot be held personally liable on contracts entered into while acting in his corporate capacity is a particular application of this principle") (citing, *inter alia*, Revere Press v. Blumberg, 246 A.2d 407 (Pa. 1968); Yentis v. Mills, 148 A. 909 (1930); Restatement (Second) of Agency § 320 (1958)). Had the General Assembly intended to do so, we conclude it would have made a clearer statement to that effect, rather than resort to an ambiguous clause in a definitional provision such as Section 502. Accord Delaware River Port Auth. v. Pa. Public Utility Comm'n, 145 A.2d 172, 175-76 (Pa. 1958) (noting that this Court presumes that the General Assembly, in enacting changes to the common law, will make an express statement). Indeed, it is a fair inference that a law imposing personal liability on agents who authorize construction work would occasion some meaningful debate or dissent,

and, as noted, CASPA generated none in the legislature. While SBA asserts that its interpretation merely requires only high-level decision-making agents to personally guarantee their principals' construction projects, tellingly, SBA offers nothing in CASPA's text that would suggest such a limitation.

Moreover, we find SBA's argument that Section 2 is analogous to Section 260.2a of the WPCL unpersuasive. As an initial matter, we note that this Court has not definitively interpreted Section 260.2a as permitting an employee to bring an action against its employer's agents. In any event, we note that SBA has offered no legislative history or prior decisional law demonstrating that Section 260.2a was, in fact, a model for Section 2 of CASPA. Furthermore, we find that the language of the respective sections is not sufficiently similar to compel the conclusion that they be similarly construed. As noted *supra*, Section 2's definition of "owner" is composed of two parts, defining owner as "[a] person who has an interest in the real property . . . and who ordered the improvement to be made," and adding a proviso that "[t]he term includes successors in interest of the owner and agents of the owner acting with their authority." 73 P.S. § 502. By contrast, Section 260.2(a)'s definition of "employer" is a single, continuous list of qualifying entities that is not similarly structurally divisible. See supra note 5. We thus find SBA's analogy inapt.

In sum, for the foregoing reasons, we hold a contractor may not maintain an action under CASPA against a property owner's agents. Accordingly, we affirm the order of the Superior Court.

Order affirmed.

Chief Justice Saylor and Justices Baer, Donohue and Dougherty join the opinion.

Justice Wecht did not participate in the consideration or decision of this case.