J-A01021-21

2021 PA Super 146

| | | |
|---|---|---|
| ADIL EL-GHARBAOUI D/B/A ADEAL GENERAL CONTRACTORS | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 3057 EDA 2019 |
| ADEBOWALE AJAYI AND JIBOLA AJAYI | : | |
| | : | |

Appeal from the Judgment Entered November 27, 2019
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 170207551

BEFORE:   BENDER, P.J.E., OLSON, J., and STRASSBURGER, J.*

OPINION BY OLSON, J.:                          **FILED JULY 20, 2021**

Appellant, Adil El-Gharbaoui d/b/a Adeal General Contractors, appeals

from the November 27, 2019 judgment[1] entered upon a non-jury verdict in

---

* Retired Senior Judge assigned to the Superior Court.

[1] A review of Appellant's October 18, 2019 notice of appeal demonstrates that Appellant appealed from the trial court's September 24, 2019 Pa.R.A.P. 1925(a) opinion which, according to Appellant, denied his post-trial motion. "[A]n appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of any post-verdict motions, not from the order denying post-trial motions." *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 514 (Pa. Super. 1995) (citation omitted).  Here the judgment in favor of the Appellees and against Appellant was entered on November 27, 2019, and, as discussed more fully *infra*, upon entry of judgment, Appellant's post-trial motion was denied by operation of law pursuant to Pa.R.Civ.P. 227.4(1)(b) because the trial court failed to dispose of the post-trial motion within 120 days after its filing.  Therefore, Appellant's notice of appeal shall be treated as filed on November 27, 2019, and as an appeal from the entry of judgment.  *See McEwing v. Lititz Mut. Ins. Co.*, 77 A.3d 639, 645 (Pa. Super. 2013).  The caption has been corrected accordingly.

favor of Abebowale Ajayi and Jibola Ajayi, husband and wife, (collectively, "the

Ajayis") in the amount of $24,942.22.[2]  We affirm the judgment, in part, and

Furthermore, we note that the trial court did not formally deny Appellant's post-trial motion prior to, or in conjunction with, the issuance of its Rule 1925(a) opinion.  Rather, as discussed *infra*, the trial court entered an order on March 3, 2020, purporting to deny Appellant's post-trial motion.  ***See*** Trial Court Order, 3/3/20.

[2] As detailed more fully *infra,* the judgment consisted of a $9,942.22 award in favor of the Ajayis for attorney's fees and a $15,000.00 award on the counterclaim the Ajayis asserted against Appellant.  In their counterclaim, the Ajayis asserted that because the construction contract involved only two private, residential units, the Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. §§ 501-516, was not applicable and that instead they were permitted to recover damages pursuant to the Home Improvement Consumer Protection Act ("HICPA"), 73 P.S. §§ 517.1 through 517.19, and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 through 201-10, due to Appellant's deceptive and fraudulent conduct and representations.  The Ajayis claimed that the construction contract was for home improvement of their residence, thus implicating HICPA, and that a violation of HICPA was deemed a violation of UTPCPL, which allowed for, *inter alia*, the recovery of actual damages.

By way of background, HICPA was enacted to protect consumers from fraudulent and deceptive practices by home improvement contractors by requiring, *inter alia*, that the home improvement contractor register with the Pennsylvania Bureau of Consumer Protection.  73 P.S. § 517.3(a).  Pursuant to HICPA, an "owner" is defined as an owner of a private residence, or in the case of a person who owns three or more residences within Pennsylvania, "the person's primary residence or the part of the building which houses the primary residence of the owner and those private residences the person uses for personal recreational purposes."  ***Id.*** at § 517.2.  A "private residence" is, a "single family dwelling," a "multifamily dwelling consisting of not more than two units," or "a single unit located within any multifamily dwelling, including condominiums and cooperative units."  ***Id.***  Pursuant to HICPA, a contractor commits home improvement fraud if the contractor, *inter alia*,

_____

> 1) makes a false or misleading statement to induce, encourage or solicit a person to enter into any written or oral agreement for home improvement services or provision of home improvement materials or to justify an increase in the previously agreed upon price;
>
> (2) receives any advance payment for performing home improvement services or providing home improvement materials and fails to perform or provide such services or materials when specified in the contract taking into account any *force majeure* or unforeseen labor strike that would extend the time frame or unless extended by agreement with the owner and fails to return the payment received for such services or materials which were not provided by that date[.]

***Id.*** at § 517.8(a)(1) and (2). If a contactor violates HICPA, the contactor is deemed to violate UTPCPL. ***Id.*** at § 517.10.

Here, the Ajayis alleged in their counterclaim that Appellant violated HICPA, and, therefore, violated UTPCPL "[b]y submitting a bid and signing a contract to complete renovations for a fixed price of $160,000[.00], and then admitting that he did not intend to complete renovations for that price[.]" ***See*** Ajayis' Answer with New Matter and Counterclaims, 8/26/17, at ¶87. According to the Ajayis, "[Appellant] made a false and/or misleading statement to induce [them] to enter into the [c]ontract [and supplemental contract]" in violation of HICPA and, thus, also in violation of UTPCPL. ***Id.*** The trial court held that the Ajayis "intended to use one of the two residential units in the [p]roperty for personal purposes; namely as their primarily residence" and, as such, HICPA was applicable. Trial Court Findings of Fact and Conclusions of Law, 1/29/19, at ¶8. The trial court granted the Ajayis' counterclaim under Section 201-2(4) of UTPCPL because Appellant's actions amounted to unfair and deceptive trade practices. ***Id.*** at ¶9. Section 201-2(4)(xvi) makes it unlawful for a contractor to engage in unfair or deceptive acts or practices including, *inter alia*, "[m]aking repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing[.]" 73 P.S. § 201-2(4)(xvi). Implicit in the trial court's granting of the Ajayis' counterclaim is the premise that Appellant violated both HICPA and UTPCPL.

- 3 -

vacate the judgment, in part, and remand this case for further proceedings consistent with this opinion.[3]

A prior panel of this Court summarized the factual history as follows:

On August 30, 2010, [Appellant] entered into a contract ("original contract") with [the Ajayis] to renovate the building [the Ajayis] owned [located along] Baltimore Avenue [in] Philadelphia, [Pennsylvania] ("the property"), in exchange for $160,000[.00]. [Appellant] began work at the beginning of September 2010, after [the Ajayis] paid a $25,000[.00] deposit. [Appellant] completed demolition in September 2010, at a cost of $28,000[.00]. After demolition, the building on the property was an empty shell supported entirely by the partition and exterior walls.

From September 2010[,] to January 2011, [Appellant] ceased work on the property while waiting for a plan from the engineer. On January 29, 2011, the parties agreed to a supplemental contract ("supplemental contract"), which included additional masonry work in exchange for an additional $18,000[.00]. The supplemental contract included a payment schedule with amounts [to be paid by the Ajayis] when [Appellant] met certain construction milestones. Between January 29, 2011[,] and February 14, 2011, [Appellant] sent [the Ajayis] multiple emails documenting completion of milestones. [The Ajayis] failed to provide payment to [Appellant].

The property deteriorated over the winter as lack of funding and [Appellant's] safety concerns delayed construction. [Appellant] arranged for a structural engineer to visit the property to address his safety concerns.

On April 1, 2011, [Appellant] sent an invoice for $22,000[.00] to [the Ajayis] for completed masonry work.[4] [The Ajayis] did not

---

[3] We also vacate the March 3, 2020 order denying Appellant's post-trial motion for the reasons set forth *infra*.

[4] This April 1, 2011 invoice detailed the work performed as the demolition of the building's interior (100% completed), the excavation of the building site necessary to increase the basement ceiling height (80% completed), and the

- 4 -

make any payments. The building degraded and became extremely hazardous, prompting [Appellant] to contact the [Philadelphia] Department of Licenses and Inspection ("L & I") to voice his safety concerns. On April 11, 2011, L & I condemned the property.

On the same day, [Appellant] sent an email to L & I requesting that [it] remove his name from the property's building permit. In the email, [Appellant] stated that he had not worked on the property in three weeks. [Appellant] maintained keys to the property until April 13, 2011, when [Appellant] terminated the original contract and supplemental contract *via* email.

On September 20, 2011, [Appellant] filed a mechanics' lien claim against the property for unpaid work totaling $22,000[.00]. On September 22, 2013, [Appellant] filed a complaint to enforce [the] mechanics' lien claim. On July 1, 2015, after a three-day bench trial, the trial court [in Appellant's mechanics' lien enforcement action] awarded [Appellant] $41,500[.00], including $22,000[.00] for unpaid work, $11,000[.00 in] interest[,] and $8,500[.00] in attorney's fees and costs. The judgment [in the amount of $41,500.00] was entered on December 5, 2015[, against the Ajayis].

***Adil El-Gharbaoui v. Adebowale and Jibola Ajayi***, 2018 WL 1528354, at

*1 (Pa. Super. 2018) (unpublished memorandum) (extraneous capitalization

omitted). On appeal, this Court affirmed, in part, the portion of the judgment

for unpaid work in the amount of $22,000.00, and vacated, in part, the portion

of the judgment awarded for interest, attorney's fees, and costs in the

aggregate amount of $19,500.00. [5] ***Id.*** at *4.

_____

pouring of the building's new foundation and constructing of underpinning to support the existing foundation (85% completed). Appellant's Complaint, 2/28/17, at Exhibit B.

[5] The prior panel held that, "a mechanics' lien action is distinct from a breach of contract action seeking remedies pursuant to CASPA, which [allows for an

Following the prior appeal in which Appellant successfully defended his mechanics' lien claim for unpaid labor and materials but lost his recovery for attorney's fees and an award of interest, Appellant filed a new complaint on February 28, 2017, against the Ajayis alleging a breach of contract claim under CASPA and seeking, *inter alia*, attorney's fees, interest, and penalties. Based upon the judgment obtained in the mechanics' lien action, Appellant claimed the Ajayis were collaterally estopped from contesting the facts and legal contentions underlying his contractual claims. Upon completion of a two-day non-jury trial, the trial court, on January 29, 2019, rejected Appellant's claim pursuant to CASPA and entered a verdict in favor of the Ajayis on their

_____

award of] penalties, interest, and attorney's fees." ***El-Gharbaoui***, 2018 WL 1528354, at *3. Section 1301(a) of the Mechanics' Lien Law of 1963 states, in pertinent part, that "every improvement and the estate or title of the owner in the property shall be subject to a lien . . . for the payment of all debts due by the owner to the contractor . . . for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement[.]" 49 P.S. § 1301(a). As discussed more fully *infra*, damages recoverable under a mechanics' lien action are expressly limited by Section 1301(a) to amounts owed for labor and materials. Attorney's fees and penalties, which may be awarded as part of a successful breach of contract claim under CASPA, are not recoverable in a mechanics' lien action. ***Id.***

Here, the prior panel stated that Appellant "did not file [a breach of contract] action under CASPA [but, rather,] sought relief only under the Mechanics' Lien Law [of 1963]." ***El-Gharbaoui***, 2018 WL 1528354, at *3. Because Appellant's prior action sought to compel payment secured by the mechanics' lien, the prior panel determined that, "the trial court erred when it awarded interest and attorney's fees pursuant to CASPA in [the] mechanics' lien action." ***Id.*** (implying that, in order to recover interest, penalties, and attorney's fees, Appellant must bring a subsequent breach of contract action under CASPA).

- 6 -

counterclaim alleging that Appellant violated HICPA and UTPCPL.[6]  **See** Trial Court Findings of Fact and Conclusions of Law, 1/29/19, at 7.  Consequently, the trial court awarded the Ajayis attorney's fees in the amount of $9,942.22 for successfully defending against Appellant's CASPA action and awarded the Ajayis $15,000.00 in damages for their counterclaim.  **Id.**

On February 8, 2019, Appellant filed a post-trial motion. While Appellant's post-trial motion remained unresolved, and before Appellant filed a notice of appeal, the trial court, on June 24, 2019, ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant subsequently filed on July 16, 2019.  On September 24, 2019, the trial court filed its Rule 1925(a) opinion.  After Appellant filed a *praecipe* for entry of judgment, judgment was entered on November 27, 2019.[7]  This appeal followed.

---

[6] The trial court granted the Ajayis' counterclaim under UTPCPL on the basis that Appellant's actions amounted to unfair and deceptive trade practices, in accordance with 73 P.S. § 201-2(4)(xvi), when the Ajayis received improvements that were of a quality inferior to what was specified in the contract, as evidenced by the Ajayis' retention of another contractor to complete the work.  Trial Court Findings of Fact and Conclusions of Law, 1/29/19, at 6-7.  The trial court denied the Ajayis' request for treble damages.

[7] Pennsylvania Rule of Civil Procedure 227.4(1)(b) permits the prothonotary to enter judgment upon *praecipe* of a party when the trial court has not entered an order disposing of timely post-trial motions within 120 days after the filing of the first post-trial motion.  In the case *sub judice*, 120 days from February 8, 2019, the date Appellant filed his post-trial motion, was Saturday, June 8, 2019.  **See** 1 Pa.C.S.A. § 1908 (stating that, whenever a period of time is referred to in a statute (such as Rule 227.4(1)(b)) and the last day of the period falls on a Saturday or Sunday, such day shall be omitted from the

Appellant raises the following issues for our review:

[1.] Did the trial court commit reversible error by ruling that [CASPA] did not apply to the construction of a church, [a] day[-]care [center], and two [residential] apartments, and instead applied [HICPA and UTPCPL]?

[2.] Is Appellant entitled to a new trial where the [trial court] failed to abide by the doctrine of [collateral estoppel[8]] and

_____

computation of time). Therefore, the prothonotary was permitted to enter judgment upon *praecipe* of a party on, or after, Monday, June 10, 2019, because the trial court did not dispose of Appellant's post-trial motion within 120 days.

A judgment entered pursuant to Rule 227.4(1)(b) is final as to all parties and is not subject to reconsideration. **See** Pa.R.Civ.P. 227.4(1)(b). Moreover, a post-trial motion is deemed denied by operation of law when the trial does not enter an order disposing of the motion within 120 days **and** judgment has been entered pursuant to Rule 227.4(1)(b). **See Morningstar v. Hoban**, 819 A.2d 1191, 1195-1196 (Pa. Super. 2003), *appeal denied*, 844 A.2d 553 (Pa. 2004) (explaining that, if the trial court has not rendered a decision on the post-trial motion within 120 days of its filing, the party may await the decision of the trial court or may *praecipe* for entry of judgment in order to advance the case); **see also** Pa.R.Civ.P. 227.4(1)(b)(Explanatory Note) (stating, Rule 227.4 "does not provide an automatic limit upon the time in which the [trial] court may make its ruling. However, it does provide a time standard by which the parties and the [trial] court may proceed.").

Here, the record contains an order entered on March 3, 2020, in which the trial court purported to deny Appellant's post-trial motion. Notwithstanding that order, Appellant's post-trial motion was deemed denied by operation of law as of November 27, 2019, because the trial court had not disposed of the motion within 120 days from the date on which it was filed **and** judgment was entered by *praecipe* pursuant to Rule 227.4. **Morningstar**, 819 A.2d at 1195-1196. Therefore, the March 3, 2020 order denying Appellant's post-trial motion is a legal nullity, and we vacate the order.

[8] Although Appellant used the terms *res judicata* and collateral estoppel throughout his argument, **see** Appellant's Brief at 10-19, Appellant agreed that it is the doctrine of collateral estoppel upon which his challenge relies.

- 8 -

honor the factual rulings conclusively established by the [trial court,] and affirmed by [this Court, in the mechanics' lien action]?

[3.] Did the trial court commit reversible error by ruling that [the Ajayis'] counterclaims were not time[-]barred by the statute of limitations?

[4.] Did the trial court commit reversible error by basing its decision on inadmissible evidence, including but not limited to [the Ajayis'] exhibits that were not uploaded to the [trial court] docket in a timely manner in violation of Phila.R.J.A. 1900, and the testimony of witnesses deemed to [] be [not] credible?

Appellant's Brief at 3 (extraneous capitalization omitted).[9]

In his first issue, Appellant challenges the trial court's rejection of his breach of contract claim seeking attorney's fees and penalties pertaining to his mechanics' lien judgment on grounds that CASPA was not applicable in the instant matter.[10]

_____

**See id**. at 13 (stating, "[i]n the instant case, the doctrine of collateral estoppel applies"); **see also Matternas v. Stehman**, 642 A.2d 1120, 1124 (Pa. Super. 1994) (stating that, "the effect of *res judicata* will attach in any subsequent proceeding which attempts to address the rights of the parties in the property that was the subject of the mechanics' lien [action]. However, the doctrine of *res judicata* has no effect on subsequent actions on the contract." (footnote omitted)).

[9] For purpose of disposition, Appellant's issues have been re-organized.

[10] In his complaint, Appellant alleged that he and the Ajayis entered into a construction contract and supplemental contract and that the Ajayis breached the construction contract when they failed to make payments as due under the terms of the construction contract. Appellant's Complaint, 2/28/17, at ¶¶12-14. By way of damages, Appellant did not seek payment due under the construction contract because a mechanics' lien for the labor and materials had been obtained in his prior action and the Ajayis subsequently paid the

Appellant's issue requires this Court to interpret the CASPA statute to determine its applicability in the case *sub judice*. Our standard of review for such claims is well-established.

> When determining the meaning of a statute, a court must construe the words of that statute according to their plain meaning. 1 Pa.C.S.A. § 1903(a)[.] When the words of a statute are clear and free from all ambiguity, they are not to be disregarded under the pretext of pursuing the spirit of the statute. 1 Pa.C.S.A. § 1921(a)[.] It is only when the statute is unclear that the court may embark upon the task of ascertaining the intent of the legislature. Absent a definition, statutes are presumed to employ words in their popular and plain everyday sense, and popular meanings of such words must prevail.

***Zimmerman v. Harrisburg Fudd I, L.P.***, 984 A.2d 497, 501 (Pa. Super. 2009) (case citations and original brackets omitted), *appeal denied*, 992 A.2d 890 (Pa. 2010).

> CASPA [is] a comprehensive statute enacted in 1994 to cure abuses within the building industry involving payments due from owners to contractors, contractors to subcontractors, and subcontractors to other subcontractors. The underlying purpose of CASPA is to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract. The statute provides rules and deadlines to ensure prompt payments, to discourage unreasonable withholding of payments, and to address the matter of progress payments and retainages. Under circumstances prescribed in the statute, interest, penalt[ies], attorney['s] fees[,] and litigation expenses may be imposed on an owner, contractor[,] or subcontractor who fails to

---

amount of the lien. As per the decision by the prior panel, Appellant filed the instant breach of contact claim pursuant to CASPA in order to recover interest, 73 P.S. § 505, penalties, 73 P.S. § 512(a), and attorney's fees, 73 P.S. § 512(b). Appellant's Complaint, 2/28/17, at ¶¶15-19; ***see also El-Gharbaoui***, 2018 WL 1528354, at *3.

make payment to a contractor or subcontractor in compliance with the statute.

***Zimmerman***, 984 A.2d at 500-501 (citation, original brackets, ellipsis, quotation marks, and footnote omitted); ***see also Nippes v. Lucas***, 815 A.2d 648, 651 (Pa. Super. 2003) (stating that, "[t]he purpose of [CASPA] is to provide protection to contractors [who] require the greatest protection when they perform work on major construction projects"). "CASPA provides that when a contractor or subcontractor performs, he[, or she,] is entitled 'to payment from the party with whom the contractor or subcontractor has contracted.'" ***Scungio Borst v. 410 Shurs Lane Developers***, 106 A.3d 103, 106 (Pa. Super. 2014) (*en banc*), *quoting* 73 P.S. § 504, *aff'd*, 146 A.3d 232 (Pa. 2016); ***see also*** 73 P.S. § 507.

CASPA applies to all construction contracts that involve "[a]n agreement, whether written or oral, to perform work on any real property located within this Commonwealth" with the exception of construction contracts involving public works projects[11] and "improvements to real property [that consists] of six or fewer residential units which are under construction simultaneously." ***See*** 73 P.S. § 515 (stating that, CASPA "shall apply to construction contracts"); ***see also id.*** at § 502 (defining the term

_____

[11] "CASPA is effectively the prompt payment statute for private parties, while the [Commonwealth] Procurement Code[, 62 Pa.C.S.A. §§ 101-4604,] provides prompt payment rules for government projects" pursuant to 62 Pa.C.S.A. §§ 3901-3942. ***A. Scott Enters., Inc. v. City of Allentown***, 142 A.3d 779, 788 (Pa. 2016).

"construction contract" as, "[a]n agreement, whether written or oral, to perform work on any real property located within this Commonwealth" and defining the term "real property" as, "[r]eal estate that is improved, including lands, leaseholds, tenements and hereditaments, and improvements placed thereon"); ***Clipper Pipe & Serv. v. Ohio Cas. Ins.***, 115 A.3d 1278, 1282, 1284 (Pa. 2015) (holding that, CASPA does not apply in the context of public works projects, where the owner is a government entity); 73 P.S. § 503(a) (stating that, CASPA does "not apply to improvements to real property which consists of six or fewer residential units which are under construction simultaneously").[12]

Here, Appellant argues that CASPA was applicable in his current breach of contract action because his construction contract with the Ajayis involved improvements to a church, a day-care facility, and two residential apartments and, as such, he was entitled to recover attorney's fees and penalties related to the Ajayis' breach of the construction contract upon their failure to make payment pursuant to the contract's terms. Appellant's Brief at 19-21. Appellant contends that the church and the day-care facility are non-residential units and that, as a mixed-use property involving both non-residential and residential units, CASPA was applicable and permitted the recovery of attorney's fees and penalties. ***Id.*** at 20. Appellant further asserts

---

[12] Section 503(b) of CASPA further states that, CASPA does "not apply to contracts for the purchase of materials by a person performing work on his or her own real property." 73 P.S. § 503(b).

that the property's zoning designation as "CMX-2," which is defined as "Neighborhood Commercial Mixed Use 2," supports his proposition that CASPA applied in the instant matter because this zoning classification was applicable to buildings comprised of residential and non-residential units.[13] *Id.*

In finding that CASPA was not appliable to Appellant's breach of contract cause of action, the trial court stated,

> In this case, the contracts at issue relate[d] to real property [located along] Baltimore Avenue [in] Philadelphia, Pennsylvania[.] [The property] consist[ed] of two residential units and a basement that are under construction simultaneously. By its own terms, CASPA does not apply to this case. "A plain reading reveals that [CASPA] only applies to construction contracts in those instances where seven or more residential units are simultaneously under construction[. CASPA] was not meant to apply to renovations of a single residence." In addition, the fact that the land was zoned for "Commercial C-2" is unpersuasive because the property is a mixed-use residential building. [The Ajayis] purchased the property and engaged an architect to design the renovation of the entire building to maintain the existing use as a church on the first floor and two residential units on the second floor, plus convert the basement into useable space for church activities. Therefore, CASPA does not apply and [Appellant] is not entitled to [penalties,] interest[,] or attorney's fees.

_____

[13] We take judicial notice that Section 14-402 of the Philadelphia City Zoning Code defines CMX-2 as the zoning classification "intended to accommodate active commercial and mixed-use development, including neighborhood-serving retail and service uses." ***See*** https://codelibrary.amlegal.com/codes/philadelphia/latest/philadelphia_pa/0-0-0-203439 (last visited May 24, 2021). This zoning classification permits, *inter alia*, residential units, day-care facilities, and religious assemblies. ***See*** Philadelphia City Zoning Code Section 14-602.

Trial Court Opinion, 9/24/19, at 5 (case citation and extraneous capitalization omitted).[14]

Here, the subject property is a neighborhood commercial mixed-use property because it is comprised of commercial space, intended for use as a religious assembly and as a day-care facility, as well as two residential units. Appellant's issue of whether CASPA applies to a mixed-use property, which involves both residential units and non-residential or commercial units, presents an issue of first impression for this Court. "[B]ecause CASPA is a remedial statute, [courts] must accord it a liberal construction 'to effect its objects and to promote justice.'" **Zimmerman**, 984 A.2d at 502 n.8 (original brackets omitted); **see also** 1 Pa.C.S.A. § 1928(c) (stating that, statutes, other than those enumerated in Section 1928(b), of which none apply in the instant matter, "shall be liberally construed to effect their objects and to promote justice").

A review of CASPA, and prior case-law, demonstrates that Pennsylvania courts have applied CASPA to **all** construction contracts with the limited exception of construction contracts involving public works projects and construction contracts for improvements to real property that consists of six

_____

[14] The trial court's Rule 1925(a) opinion is time-stamped as having been filed on September 20, 2019. The trial court docket reflects that the opinion was filed on September 24, 2019, with a notation that the opinion was "filed" on September 20, 2019. For purposes of clarity, we deem the trial court opinion filed on September 24, 2019.

or fewer residential units which are under construction simultaneously. The term "improve" is defined by CASPA as:

> To design, effect, alter, provide professional or skilled services, repair or demolish any improvement upon, connected with or on or beneath the surface of any real property, to excavate, clear, grade, fill or landscape any real property, to construct driveways and private roadways, to furnish materials, including trees and shrubbery for any of these purposes, or to perform any labor upon improvements.

73 P.S. § 502. CASPA defines the term "improvement" to include:

> (1) All or any part of a building or structure.
>
> (2) The erection, alteration, demolition, excavation, clearing, grading or filling of real property.
>
> (3) Landscaping, including the planting of trees and shrubbery, and constructing driveways and private roadways on real property.

*Id.* "Real Property" is defined by CASPA as "[r]eal estate that is improved, including lands, leaseholds, tenements and hereditaments, and improvements placed thereon." *Id.*

CASPA's stated applicability to a broad range of construction contracts that entail improvements "to any part of a building or structure," including alterations effecting improvements "upon, connected with[,] or on or beneath the surface of any real property," including, *inter alia*, excavation work, leads us to conclude that CASPA was intended to apply to construction contracts involving mixed-use property comprised of both residential and non-residential or commercial units, so long as the scope of the construction contact is not restricted to the improvement of six or fewer residential units

which are under construction simultaneously. Stated another way, CASPA applies to construction contracts except those contracts involving public works projects and construction contracts for the improvement to real property consisting **solely** of six or fewer residential units under construction simultaneously.

In the case *sub judice*, the trial court held that CASPA did not apply to the parties' construction contract and supplemental contact because "the contracts at issue in this case relate[d] to real property consisting of two residential units under construction simultaneously." Trial Court Findings of Fact and Conclusions of Law, 1/29/19, at 5 ¶2. Construing CASPA's scope in this way, the trial court erred in disregarding that the construction contact between the parties for the Ajayis' real property also included work performed in connection with commercial property, namely the church and day-care facility. As the trial court observed in its Rule 1925(a) opinion, "[the Ajayis] purchased the [real p]roperty and engaged an architect to design the renovation of the **entire** building to maintain the existing use as a church on the first floor and two residential units on the second floor, plus convert the basement into useable space for church activities." Trial Court Opinion, 9/24/19, at 5 (emphasis added). Engaging an architect to design renovations to the entire building suggested that the Ajayis intended to make improvements to the **entire** structure, including the commercial units within the property that would be open to the public such as the church and day-care facility. Furthermore, as discussed **supra**, Appellant's invoice detailing the

- 16 -

unpaid balance due for labor and materials, which was the ground for the mechanics' lien and now forms the basis of Appellant's breach of contact claim under CASPA, stated that the work performed was for 100% of the demolition of the interior of the entire building, as well as the majority (80-85%) of the work necessary to excavate the building's foundation, pour a new foundation, and secure through underpinning the remaining existing foundation. This use of labor and materials related to improvements to the **entire** real property owned by the Ajayis that involved both residential and commercial units and did not relate solely to the two residential units.

CASPA, which has long-been viewed as a comprehensive statute, was designed to "cure abuse in the building industry" and afford protection to contractors and subcontractors involved in **major** construction projects. ***See Zimmerman, supra***; ***see also Nippes, supra***. The objective of CASPA would be thwarted if the statute were deemed inapplicable to construction contracts that involved covered commercial structures, including mixed-use development, simply because the construction contract involved improvements on the same land or building to six or fewer residential units. Therefore, consistent with the principle that remedial statutes be liberally construed, we find that CASPA was intended to apply to construction contracts involving covered structures, including mixed-use development, such as the property in the case *sub judice*, regardless of the number of residential units coincidentally involved in the contract. Consequently, the trial court erred in determining that CASPA did not apply to Appellant's breach of contract cause

of action seeking recovery of attorney's fees and penalties pursuant to CASPA.[15]

Having found that CASPA applied to Appellant's cause of action, we turn to Appellant's second issue in which Appellant contends that the elements necessary to prove a cause of action for breach of contract, thereby permitting the recovery of damages pursuant to CASPA, were established in the prior mechanics' lien action and that, pursuant to the doctrine of collateral estoppel, the trial court in the case *sub judice* erred by failing to award penalties and attorney's fees pursuant to CASPA. Appellant's Brief at 14.

Our standard and scope of review in the case *sub judice* implicates the following general principles:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial [court] must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope

---

[15] Appellant's argument in support of his first issue asserts only that the trial court erred in applying HICPA, and not CASPA, in the disposition of his claim for attorney's fees and penalties relating to his breach of contract claim. Accordingly, we have examined Appellant's first claim within the confines of his limited argument. Appellant has not advanced an argument which asserts that the application of CASPA in the instant cause of action for attorney's fees and penalties precludes, as a matter of law, the application of HICPA or UTPCPL to the Ajayis' counterclaim. We, therefore, have not addressed this issue and leave the Ajayis' $15,000.00 award intact.

of review is plenary. The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Wyatt Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 564 (Pa. Super. 2009) (citation, original brackets, ellipsis, and original paragraph formatting omitted).

The doctrine of collateral estoppel "bars re-litigation of an issue that was decided in a prior action, although it does not require the claims as such be the same." *In re Coatesville Area Sch. Dist.*, 244 A.3d 373, 379 (Pa. 2021).

> Collateral estoppel will only apply where: the issue is the same as in the prior litigation; the prior action resulted in a final judgment on the merits; the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action. In some renditions, courts add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment.

*Id.* at 379 (citations omitted). Collateral estoppel is premised on practical considerations[, including] avoiding the 'cost and vexation' of repetitive litigation, conserving judicial resources, and, by preventing inconsistent decisions, encouraging reliance on adjudication." *Id.* (citation, some quotation marks, and original brackets omitted).

> Additionally, when a plaintiff seeks to employ the doctrine [of collateral estoppel] offensively, courts must also consider whether (1) plaintiff had an opportunity to join the earlier action, (2) the defendant had an incentive to defend the first action vigorously, (3) the judgment relied upon as a basis for collateral estoppel is inconsistent with one or more previous judgments in favor of the

defendant, and (4) the second action would afford the defendant procedural opportunities unavailable in the first action that could produce a different result. In considering whether the application of the doctrine of offensive collateral estoppel is warranted, the general rule should be that in cases where a plaintiff could easily have joined the earlier action or where, either for the aforementioned reasons or for other reasons, the application of offensive collateral estoppel would be unfair to a defendant, a trial [court] should not allow the use of collateral estoppel.

*Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 15 (Pa. Super. 2004) (citations, original brackets, quotation marks, and ellipsis omitted), *aff'd*, 928 A.2d 186 (Pa. 2007).

Here, Appellant asserts that implicit in his obtaining a mechanics' lien against the Ajayis' real property for the amount of unpaid labor and materials ($22,000.00), a ruling that was affirmed by this Court, was the principle that, pursuant to the doctrine of offensive collateral estoppel, the trial court in the case *sub judice* was required to find that a breach of contract claim had been established and that, pursuant to CASPA, Appellant was entitled to an award of penalties and attorney's fees.[16]  Appellant's Brief at 13-14 (stating that,

---

[16] In order to be entitled to relief under CASPA, a party must first establish a contractual right to payment pursuant to either a written or oral construction contract and a subsequent breach of that construction contract. *Scungio*, 106 A.3d at 109.

> Thus, the construction contract is the starting point of any CASPA analysis.  CASPA does not supplant the traditional breach of contract action between contracting parties; it merely makes additional remedies available to contractors and subcontractors when they are not promptly paid by the party with which they contracted.

*Id.*

"[a]s [the] facts [established in the mechanics' lien action] encompass the elements necessary [for] a breach of contract [claim], the necessary facts have been [previously] decided [to permit the trial court in the instant case] to enter an award pursuant to [CASPA]"). Specifically, Appellant contends that his mechanics' lien in the amount of $22,000.00 demonstrated that "[he] did not breach the contract (or else he could not have been given an award under the Mechanics' Lien [Law of 1963], [the Ajayis] owned payment for the services rendered, [the Ajayis] had no valid reason to withhold [Appellant's] payment" and the Ajayis breached the construction contract by failing to make payment. *Id.* at 13. In other words, the doctrine of offensive collateral estoppel required the trial court in the case *sub judice* to find the existence of a construction contract between the parties that required the Ajayis to make payment to Appellant in the amount of $22,000.00, that the Ajayis breached the contract by failing to make such payment, and that as a result of this breach, Appellant suffered damages and was entitled to recover penalties and attorney's fees pursuant to CASPA.

A breach of contract action, unlike a mechanics' lien action, is an *in personam* action intended to settle the contractual obligations of the parties and attaches to the general assets of the unsuccessful party and not to the property, itself.[17] **Matternas**, 642 A.2d at 1123; **see also Wyatt**, 976 A.2d

---

[17] By contrast, a mechanics' lien is an *in rem* action that "addresses the rights of parties *vis-à-vis* a parcel of property [and] does not address the rights of

at 570. In a breach of contract claim seeking remedies pursuant to CASPA, the trial court may award penalties, attorney's fees, and costs whereas in a mechanics' lien action, recovery is limited to the debt for work done, or for materials furnished, and does not permit the recovery of unliquidated damages. *Wyatt*, 976 A.2d at 570.

CASPA requires an owner to pay a contractor "strictly in accordance with the terms of the construction contract." 73 P.S. § 505(a). Section 512 of CASPA states,

> If arbitration or litigation is commenced to recover payment due under this act and it is determined that an owner, contractor[,] or subcontractor has failed to comply with the payment terms of this act, the arbitrator or [trial] court **shall** award, in addition to all other damages due, a penalty equal to 1% per month of the amount that was wrongfully withheld.

*Id.* at § 512(a)(1) (emphasis added); *see also Scungio*, 106 A.3d at 106 (stating that, CASPA requires that a penalty equal to 1 *per centum* per month be assessed against an owner if payment due under the terms of the construction contract was wrongfully withheld and the contractor commenced litigation to recover payment). Section 512(a)(2) states,

> An amount shall not be deemed to have been wrongfully withheld
> if all of the following apply:

---

the parties *vis-à-vis* each other." *Matternas*, 642 A.2d at 1123. "A mechanics' lien is simply a statutory security for enforcing the payment of certain claims which have supposedly added to the value of the property[.]" *Id.* at 1124.

(i) The amount bears a reasonable relation to the value of any claim held in good faith by the owner, contractor[,] or subcontractor against whom the contractor or subcontractor is seeking to recover payment.

(ii) The claim holder complies with [Section 506, relating to an owner's withholding of payment for good faith claims, or Section 511, relating to a contractor's or subcontractor's withholding of payment for good faith claims.]

73 P.S. § 512(a)(2). Because the case *sub judice* involves an owner's withholding of payment from a contractor, we examine Section 506, which states,

### § 506. Owner's withholding of payment for good faith claims

**(a) Authority to withhold.**--The owner may withhold payment for deficiency items according to the terms of the construction contract. The owner shall pay the contractor according to the provisions of this act for any item which appears on the invoice and has been satisfactorily completed.

**(b) Notice.**--

(1) Except as provided under [Section 509, relating to retainage, which is not at issue in the case *sub judice*,] if an owner withholds payment from a contractor for a deficiency item, the amount withheld shall be reasonable and the owner shall notify the contractor of the deficiency item by a written explanation of its good faith reason within 14 calendar days of the date that the invoice is received.

(2) Failure to comply with paragraph (1) shall constitute a waiver of the basis to withhold payment and necessitate payment of the contractor in full for the invoice.

(3) If an owner withholds payment from a contractor for a deficiency item, the owner shall remit payment to the contractor for each other item that has been satisfactorily completed under the construction contract.

*Id.* at § 506.

An award of penalties on an amount wrongfully withheld is mandatory pursuant to Section 512(a). *Zimmerman*, 984 A.2d 497, 502-503; *see also Imperial Excavating and Paving, LLC v. Rizzetto Constr. Mgmt., Inc.*, 935 A.2d 557, 564 (Pa. Super. 2007) (stating that, the "[u]se of the word 'shall' in [Section 512] can only be interpreted as a legislative mandate"). Prior to awarding penalties, however, a trial court is required to conduct a hearing and make factual determinations as to whether the owner's withholding of payment was "wrongful" under Section 512(a). In the case *sub judice*, the trial court did not make such a factual determination.

Regarding Appellant's request for attorney's fees, Section 512(b) states,

> **Award of attorney fee and expenses.**--Notwithstanding any agreement to the contrary, the **substantially prevailing party** in any proceeding to recover any payment under this act **shall** be awarded a reasonable attorney fee in an amount to be determined by the [trial] court or arbitrator, together with expenses.

73 P.S. § 512(b) (emphasis added).

> While the mandatory language of section 512(b) requires an award of attorney's fees to a substantially prevailing party, the issue of whether any party to a lawsuit substantially prevailed is left to the trial court's discretion.

*Zavatchen v. RHF Holdings, Inc.*, 907 A.2d 607, 610 (Pa. Super. 2006) (internal citation omitted), *appeal denied*, 917 A.2d 315 (Pa. 2007). Determining whether a party substantially prevailed in a cause of action under CASPA does not turn "on a simple mathematical comparison of the parties['] respective recoveries." *Zavatchen*, 907 A.2d at 609 (recognizing that,

"requiring an award of attorney's fees simply because a party won a net judgment would effectively write[-]out the modifier 'substantially'" (some quotation marks omitted)).  Rather, a "substantially prevailing party" under CASPA must: (1) be a "prevailing party," which means that judgment was entered in the party's favor, and (2) any claim that the owner was authorized to withhold payment in accordance with Section 506 of CASPA was groundless or frivolous.  *Id.* at 611.  The issue of whether a party to a cause of action under CASPA is a "substantially prevailing party" is left to the sound discretion of the trial court.  *Id.* at 610.  In the case *sub judice*, the trial court made no determination as to whether Appellant was a substantially prevailing party.

In addressing Appellant's second issue, we are mindful that a mechanics' lien action is a method by which a contractor (or subcontractor) who has invested labor and materials in an owner's property can obtain a security for their investment independent of other contractual remedies, provided that the statutory requirements to obtain a mechanics' lien, as set forth in the Mechanics' Lien Law of 1963, 49 P.S. §§ 1101-1902, are strictly followed.  Obtaining a mechanics' lien as security for payment can be more expeditious than pursuing a breach of contract claim and a mechanics' lien assumes priority over other liens.  ***Philadelphia Constr. Servs. LLC v. Domb***, 903 A.2d 1262, 1267-1268 (Pa. Super. 2006); ***see also Terra Firma Builders, LLC v. King***, ____ A.3d ____, 2021 WL 1681341, at *6 (Pa. 2021) (slip opinion) (stating that, "a mechanics' lien is an extraordinary remedy that provides the contractor with a priority lien on property, an expeditious and advantageous

remedy"). While an action for a mechanics' lien sounds in a breach of contract claim, the defenses against such an action are limited to the filing of preliminary objections raising a claim that the property is exempt or immune to such a lien or that the action failed to conform to the requirements of the Mechanics' Lien Law of 1963.[18] 49 P.S. § 1505 (stating that, "[a]ny party may preliminarily object to a claim upon a showing of exemption or immunity of the property from lien, or for lack of conformity with [the Mechanics' Lien Law of 1963]").

Provided that the requirements necessary for the application of the doctrine of collateral estoppel or, in the case *sub judice*, the doctrine of offensive collateral estoppel, have been established before the trial court, then the existence of a construction contract and a breach of that agreement, as determined in a prior mechanics' lien action, may preclude re-litigation of these elements in a subsequent breach of contract action brought pursuant to CASPA. In other words, if all of the necessary elements for offensive collateral estoppel have been established, a contractor (such as Appellant) bringing a breach of contract claim under CASPA may rely on the doctrine of offensive collateral estoppel in order to avoid relitigating certain issues that were resolved on the merits in a prior mechanics' lien action in order to prove his or her entitlement to relief. Additionally, if all of the necessary elements for

---

[18] The damages and remedies available in a mechanics' lien action are "limited by statute to [the] amount owed for work and materials, plus, through decisional law, profits." **Wyatt**, 976 A.2d at 570.

offensive collateral estoppel have been established by the contractor, then a defendant (such as the Ajayis) facing a breach of contract claim under CASPA may be collaterally estopped from relitigating certain issues that were resolved on the merits in a prior mechanics' lien action. At this juncture, however, the required underlying determinations have not yet been made.[19]

Here, the trial court erroneously determined that CASPA did not apply to Appellant's cause of action. Therefore, the trial court did not consider if, and to what extent, the doctrine of offensive collateral estoppel precluded re-litigation of certain issues, namely the existence of a construction contract, the Ajayis' breach of that contract, and what damages, if any, Appellant was eligible to recover as a result of that breach.[20] Therefore, we remand this case for such relevant determinations in light of our holding herein.

Furthermore, we vacate the award of attorney's fees in favor of the Ajayis. After examining the applicability of the doctrine of offensive collateral estoppel, the trial court shall determine: (1) whether Appellant is entitled to penalties on any amount wrongfully withheld by the Ajayis pursuant to Section

_____

[19] If all of the necessary elements of offensive collateral estoppel have not been met and issues underlying a theory of recovery have not been resolved, then those issues must be tried and resolved for the first time in the subsequent litigation.

[20] Appellant is limited to one ultimate satisfaction for the expense of his labor and materials and cannot recover twice for the same loss. **Wyatt**, 976 A.2d at 570 n.9.

512(a), and (2) whether Appellant was the substantially prevailing party and, thus, entitled to attorney's fees pursuant to Section 512(b).

Appellant's third issue challenges the trial court's finding that Appellant waived the statute of limitations defense to the Ajayis' counterclaim for violations of UTPCPL and HICPA,[21] because he raised this defense after the conclusion of trial. Appellant's Brief at 24; **see also** Trial Court Opinion, 9/24/19, at 7 (stating that, "[Appellant] raised the [statute of limitations] defense for the first time[] following [the conclusion of the] trial"). Appellant contends he raised the statute of limitations defense in paragraph 117 of his answer and new matter to the Ajayis' counterclaims, which he filed prior to the conclusion of the trial. Appellant's Brief at 24.

As stated **supra**, "[o]ur appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." **Wyatt**, 976 A.2d at 564.

A statute of limitations defense is generally raised in new matter. **See** Pa.R.Civ.P. 1030(a) (stating that, "all affirmative defenses including but not limited to the defenses of ... statute of limitations ... shall be pleaded in a

_____

[21] A HICPA violation constitutes a violation of UTPCPL. 73 P.S. § 517.10. A UTPCPL claim is subject to a 6-year statute of limitations. **Morse v. Fisher Asset Mgmt., LLC**, 206 A.3d 521, 526 (Pa. Super. 2019); **see also** 42 Pa.C.S.A. § 5527(b) (stating that, "[a]ny civil action or proceeding which is neither subject to another limitation specified in this subchapter nor excluded from the application of a period of limitation by section 5531 (relating to no limitation) must be commenced within six years").

responsive pleading under the heading 'New Matter'"); *see also Sayers v. Heritage Valley Med. Group, Inc.*, 247 A.3d 1155, 1159-1160 (Pa. Super. 2021) (holding that, a statute of limitations defense, although generally raised by way of new matter, may be considered when raised *via* preliminary objections, and not in new matter, in limited circumstances). "Pennsylvania is a fact-pleading jurisdiction[.]" *Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1029 (Pa. 2018). The material facts upon which a defense is based "shall be stated in a concise and summary form." *Id.*, *citing* Pa.R.Civ.P. 1019(a) (stating that, "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form"). "While our rules require the pleading of all material facts upon which claims[, and defenses,] are based, there is no requirement to plead the evidence upon which the pleader will rely to establish those facts." *Golden Gate*, 194 A.2d at 1029 (citation omitted).

"The statute of limitations is an affirmative defense which must be specifically pleaded[,] or the defense is waived." *Tanner v. Allstate Ins. Co.*, 467 A.2d 1164, 1168 (Pa. Super. 1983) (citations omitted); *see also Marucci v. Lippman*, 177 A.2d 616, 617 (Pa. 1962). An affirmative defense, including a statute of limitations defense, may not be raised by general averment but, rather, must be supported by factual allegations sufficient to give rise to the affirmative defense. *Falcione v. Cornell Sch. Dist.*, 557 A.2d 425, 428 (Pa. Super. 1989) (stating that, "[a]n affirmative defense is distinguished from a denial of facts which make up the plaintiff's cause of

- 29 -

action in that a defense will require the averment of facts extrinsic to the plaintiff's claim for relief").

Here, a review of Appellant's answer and new matter to the Ajayis' counterclaims demonstrates that Appellant pleaded the statute of limitations defense as follows:

> 117. [Appellant, plaintiff before the trial court,] raises the affirmative defense of the statute of limitations.

Appellant's Reply to New Matter and Answer to Counterclaim with New Matter, 9/18/17, at ¶117.

We concur with the trial court that Appellant failed to plead a statute of limitations defense with sufficient specificity. **See** Trial Court Opinion, 9/24/19, at 8. Here, Appellant alluded to the defense in a single, threadbare declaratory sentence which suggested, without factual elaboration or support, that the Ajayis' counterclaims may be barred by the limitations period.[22] Appellant failed to comply with Rule 1030(a) because the averments contained in his new matter did not convey the factual underpinnings upon which his statute of limitations defense rested. Therefore, Appellant waived the statute of limitations defense. Consequently, Appellant's third issue is without merit.

---

[22] Appellant sent his last invoice to the Ajayis on April 1, 2011, and maintained keys to the property until April 13, 2011. **El-Gharbaoui**, 2018 WL 1528354, at *1. The Ajayis did not file their counterclaim in the case *sub judice* until August 26, 2017.

In his final issue, Appellant challenges the non-jury verdict, and requests a vacation of judgment, on the grounds that "the [t]rial [c]ourt based its determination[, in favor of the Ajayis,] on inadmissible evidence and [witness testimony] deemed [not] to [] be credible." Appellant's Brief at 26-31.

We begin by addressing Appellant's challenge to the admissibility of evidence, for which our standard of review is well-settled.

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court[,] and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment[ but, rather, is] the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused[,] and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted), *appeal denied*, 244 A.3d 1222 (Pa. 2021). In order to preserve a challenge to the admissibility of evidence for appellate review, Pennsylvania Rule of Evidence 103(a)(1) requires a party to make "a timely objection, motion to strike, or motion *in limine*" that "states the specific ground" for the objection. *See* Pa.R.E. 103(a)(1)(A) and (B).

Here, Appellant argues that the trial court erred in admitting into evidence the Ajayis' trial exhibits (Exhibits D1 through D11) because the Ajayis' counsel failed to submit the trial exhibits in accordance with

Philadelphia Rule of Judicial Administration 1900, which requires exhibits to be uploaded to an electronic filing system within five days of the conclusion of the trial. Appellant's Brief at 27. Appellant also argues that certain additional trial exhibits offered by the Ajayis should not have been admitted because they were not properly authenticated. Appellant's improper authentication challenge extends to the following exhibits: (1) Exhibit D1, which included architectural drawings of the property, (2) Exhibit D10, which was the contract the Ajayis executed with another construction company, Ollymann Construction, Inc., to complete "existing foundation underpinning" at the property, and (3) Exhibit D11, which included proof of payment to Ollymann Construction, Inc. for work performed pursuant to its contract. *Id.* at 29.

A review of the record demonstrates that, on December 18, 2018, counsel for both parties acknowledged that the exhibits admitted at trial were to be filled electronically with the trial court within five days of the conclusion of the trial. *See* Trial Exhibit List, 12/18/18, at 3. The non-jury trial concluded on December 18, 2018, and both parties had until December 24, 2018, to file their respective exhibits.[23] The trial court docket reveals that the Ajayis electronically filed Exhibits D1 through D11 with the trial court on December 25, 2018. The trial court docket further demonstrates that Appellant failed to

_____

[23] Five days after the conclusion of the non-jury trial was Sunday, December 23, 2018. Therefore, the parties had until December 24, 2018 to file copies of the admitted exhibits electronically with the trial court. *See* 1 Pa.C.S.A. § 1908, *supra*.

lodge an objection on the record raising the Ajayis' alleged failure to comply with Philadelphia local rule 1900. Because Appellant failed to raise this issue with the trial court, the issue is waived, and Appellant is prohibited from raising this issue for the first time on appeal. Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Regarding Appellant's argument that Exhibits D1, D10, and D11 were not properly authenticated and, therefore, inadmissible, Appellant needed to challenge the authenticity of these materials when they were introduced at trial or when they were admitted into evidence. Pa.R.E. 103(a)(1). The certified record, however, does not contain a transcript of the trial. It is incumbent upon the party relying on certain materials to ensure that a complete record is forwarded to this Court and to take any necessary steps to correct omissions from the record to facilitate proper review of the issues. *Erie Ins. Exch. v. Moore*, 175 A.3d 999, 1006 (Pa. Super. 2017). A copy of the trial transcript, however, appears in Appellant's reproduced record. Generally, we may not consider documents contained in the reproduced record if they were never filed with the trial court. *Id.* at 1007 n.10. The Ajayis, however, did not object to the inclusion of the transcript as part of Appellant's reproduced record and, in fact, cited to the transcript in their brief. *See* The Ajayis' Brief at 21. The trial court, in its Rule 1925(a) opinion, explained that Appellant failed to contemporaneously object to the introduction or admission of these exhibits thereby preserving this issue for review. Trial Court Opinion,

9/24/19, at 9.  We will, therefore, assume that the transcripts were in fact filed with the trial court even though they were not included as part of the certified record.

A review of the transcript contained in the reproduced record demonstrates that when Exhibits D1, D10, and D11 were introduced at trial, Appellant failed to raise an objection to each exhibit, including an objection that each exhibit was not properly authenticated.  N.T., 12/17/18, at 192, 211-212.[24]  When the testimony of the witnesses concluded, the trial court asked Appellant's counsel if there were any objections to the admission of Exhibits D1 through D14.  Appellant's counsel indicated that there were no objections beyond the standing objection that some documents had been previously submitted in the mechanics' lien action and ruled on as part of that litigation.  N.T., 12/18/18, at 97.  The trial court, thereupon, admitted Exhibits D1 through D14 noting that there were no objections.  *Id.*  Because Appellant failed to lodge an objection to the admission of Exhibits D1, D10, or D11 contemporaneous with their introduction at trial or their admission into evidence, we find that Appellant waived this issue for review.

Finally, Appellant argues that the trial court erred in finding Pastor Ekpin's testimony credible and Appellant's testimony incredible when it

_____

[24] The transcripts from both days of the trial proceedings are dated December 18, 2018.  The trial court indicated, and the record supports, that the first day of trial occurred on December 17, 2018, and the second day of trial occurred on December 18, 2018.  *See* Trial Court Opinion, 9/24/19, at 2.  We will refer to each transcript by the date upon which the events occurred.

awarded the Ajayis $15,000.00 in the counterclaim for violation of HICPA and UTPCPL. Appellant's Brief at 30. Appellant contends that the trial court was bound by the prior trial court's credibility determinations in the mechanics' lien action, which found Appellant's testimony to be credible. *Id.* (asserting that, the prior trial court "found [Appellant's testimony credible and largely found [the Ajayis'] testimony to be inconsistent and not believable").

When reviewing a verdict in a non-jury trial, this Court "will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the [trial] court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." ***J.J. DeLuca Co., Inc. v. Toll Naval Assocs.***, 56 A.3d 402, 410 (Pa. Super. 2012). "The test is not whether this Court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion." ***Gutteridge v. J3 Energy Group, Inc.***, 165 A.3d 908, 916 (Pa. Super. 2017) (citation omitted).

In the case *sub judice*, the trial court found,

> Pastor Ekpin testified credibly that he and a crew of volunteers and paid day[-]laborers performed all of the excavation [work] after [Appellant] had permanently ceased work on the project in February [] 2011 and that [Appellant] had done none of the excavation [work] required by the contract.

Trial Court Findings of Fact and Conclusions of Law, 1/29/19, at ¶20 (extraneous capitalization omitted). The trial court further found that, "[o]n

November 25, 2011, [the Ajayis] contracted with Ollymann Construction, Inc., to complete 'Existing Foundation Underpinning' that [Appellant] failed to complete." *Id.* at ¶22. The trial court awarded the Ajayis $15,000.00 in the counterclaim because this was the amount the Ajayis paid Ollymann Construction, Inc. to complete the work that was not completed by Appellant pursuant to the terms of the parties' contract. *Id.* at ¶17.

Appellant's argument invites this Court to reassess the witnesses' credibility and reweigh the evidence in an attempt to reach a result different than the one reached by the trial court, as fact-finder. We decline Appellant's invitation. *Gutteridge*, 165 A.3d at 916 (stating that, "[a]ssessments of credibility and conflicts in evidence are for the trial court to resolve[. T]his Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder" (citation omitted)). Based upon the record before us, we discern no abuse of discretion on the part of the trial court based upon Appellant's claim that the verdict was against the weight of the evidence. Therefore, Appellant's claim is without merit.[25]

_____

[25] Moreover, Appellant's mechanics' lien action was premised upon the Ajayis' failure to make payment in the amount of $22,000.00, as detailed in the April 1, 2011 invoice, which, as described by Appellant in the invoice, included labor and materials associated with, *inter alia*, 80% of the required excavation work and 85% of the foundation work. In the instant case, the Ajayis' counterclaim is based upon Appellant's failure to complete excavation and foundation work pursuant to the terms of the contract, and the Ajayis' need to retain a second contractor to complete the work. We find no merit to Appellant's contention that the trial court in the case *sub judice* is bound by the credibility determinations made by the trial court in the mechanics' lien action, and in particular with regard to Paster Ekpin, who did not testify in the mechanics' lien action.

In sum, for the reasons set forth herein, we affirm the judgment, in part, as it pertains to the award of $15,000.00 in favor of the Ajayis for the counterclaim. We vacate the judgment, in part, as it pertains to the award in favor of the Ajayis for attorney's fees in the amount of $9,942.22. We remand this case to the trial court for further proceedings consistent with this opinion.

Judgment affirmed, in part, and vacated, in part. March 3, 2020 Order vacated. Case remanded. Jurisdiction relinquished.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2021